## In the matter of BROADWAY WIDENING.

Where two of the justices assigned to the general term of the Supreme Court in the first department are, by reason of interest, incapable of sitting, on an appeal, the general term may be held by one of the justices of the first department, assigned to hold general terms, and two justices from another department.

The appeal, in such a case, need not be sent to another department, under section 10 of chapter 408 of the Laws of 1870.

Where the statute, under which commissioners of estimate and assessments in the matter of widening a street are appointed, expressly authorizes two of the commissioners to act, and declares that their acts shall be as valid as the acts of all, a report signed by two of them, only, is valid.

The provision, to that effect in the act of 1818, is not abrogated by section 7, article 1, of the constitution of 1846, which requires compensation to owners

Matter of Broadway Widening.

of property to be ascertained by a jury, or by not less than three commissioners.

Notwithstanding the constitutional provision, the legislature can authorize a decision by a majority of the commissioners.

A provision in a statute authorizing the widening of a street, which requires that the report of the commissioners shall be made within six months, is to be deemed merely directory, and not a matter of jurisdiction. If the report is not made within the time, jurisdiction is not lost by the delay.

A clause in a statute by which a majority of the new commissioners of estimate and assessment, therein directed to be appointed by the court, are required to be other than the former commissioners, is not to be construed as a violation of the constitutional provision giving the appointing power to the court.

A statute authorized the court to refer the matter of widening a street to new commissioners, after vacating a former order of confirmation, on a notice of five days. The court having, under this act appointed commissioners and one of them having declined to act; *Held* that the same court had power to supply his place without notice of the motion for an appointment. That want of notice could be only an irregularity.

When the value of land taken for a street improvement is awarded to the landlord, and the value of the buildings thereon is (according to the provisions of the lease) awarded to the tenant, this makes the total value of the property, and nothing more can be required.

A minority report from the commissioners cannot properly come before the court. There can be only one report, and that is the report of the whole, or a majority, of the commissioners.

By an act, passed February 27, 1871, the legislature authorized the court to vacate an order of confirmation, and to refer the matter back to commissioners. The act directed the commissioners to amend and correct said report, or to make a new assessment, in whole or in part, as the court should direct. The act further authorized the commissioners, in making such corrected or new assessment, to assess any and all property which they might deem benefited, and repealed the former limitation. (*Laws of* 1871, *ch.* 57, § 4.) The court, by an order granted April 3, 1871, vacated the order of confirmation, and directed the new commissioners to amend and correct said report *and* to make a new assessment in whole. *Held* that whatever the language of the order was, the act was plain; and that the commissioners could go beyond the former area of assessment.

THIS was an appeal, by Robert J. Livingston, from an order of Judge Gilbert, confirming the report of the commissioners appointed to widen Broadway from 34th to 59th streets, in the city of New York, under the act

of the legislature of February 27, 1871. (*Laws of* 1871, *chap.* 57.)

The notices required by law, the abstract of the report, and the final report were all made and given by two of the commissioners. The third commissioner refused to act with his colleagues, from an early period of their work. He presented a minority report, in which he stated that the majority report was made without meeting, deliberating or consulting with him.

The appellant, Livingston, objected to the confirmation of the report, at the special term.

The following opinion was delivered at the special term, on a motion to confirm the report of a majority of the commissioners.

GILBERT, J. Nothing appears in the papers before me warranting the inference that the commissioners have been influenced in making their determinations by any unworthy motive, or that, excepting some omissions, which will be mentioned presently, they have committed any error of which the court can take cognizance. It was, indeed, stated by the counsel for some of the objectors that one of the commissioners owned some lots which were within the former district of assessment, but are not within the present one. There is not, however, any evidence of this fact, or any circumstance indicating that if it exists it had any influence on the action of either commissioner. The presumption of law in favor of the fidelity of all public officers, therefore, must be applied in this case. Upon such facts the rule of the law is firmly established, that the determination of matters of fact by the commissioners is final and conclusive, and not in anywise the subject of judicial review. It is only where the proceedings show that they acted upon some erroneous principle or rule of valuation, or violated some legal right, that the court can interfere with their decision. Neither of these facts has

been shown. Disparity in valuation, no doubt, appears, but such disparity does not prove error. They who allege error must give evidence showing, not merely that inequality of valuation exists, or that their property is of equal value with that allowed in particular cases to others, but that, in point of fact, it exceeds the valuation awarded to them. For otherwise, an error in making an excessive valuation of one man's property would enable every owner of property taken to derive a benefit from such error. The rule stated governs both the assessment for benefits and the award for damages. With respect to the assessment for benefit, it has been urged that the commissioners erred in establishing the district of assessment. It is said that much of the property in the district will derive no benefit from, but will be injured by the proposed improvement, and that most of the property most directly and certainly benefited by the improvement has not been assessed at all. The answer to this objection has already been made, namely, that it is a subject which the law commits solely to the judgment of the commissioners. The court is not authorized to assume that the statement is true in point of fact, or to overrule their determination honestly made. It is also insisted, that the order under which the commissioners acted did not empower them to make a new district of assessment, but that they were restricted within the limitations on this subject contained in the act of May 17, 1869. I am of a contrary opinion. The order required them to "make a new assessment in whole, both as to awards for damage and assessment for benefit." The order does not, and could not properly, contain any restriction upon the discretion of the commissioners in performing the duty thus devolved upon them. For, by the act of February 27, 1871, power was expressly given to the court or justice to direct a new assessment in whole or in part, and to the commissioners, "to assess any and all property which they deemed bene-

·fited by the improvement," and the limitation contained in the act of 1869 was explicitly abrogated. The order having directed a new assessment in whole, the commis-·sioners had the right, and it was their duty to exercise the discretion conferred upon them by the statute, by assessing such property as they deemed benefited, and by apportioning the burden according to their estimate of the benefit which each parcel would receive. This they have done, and, as already stated, no legal error in their proceedings has been shown. The addition of $300,000 to the assessment against the mayor, aldermen and commonalty of New York, even if irregular, forms no ground of complaint by individual tax-payers. (18 *N. Y.* 155.) Moreover, they were benefited by it. No objection has been presented on behalf of the corporation. It was also ·objected, that these proceedings are illegal for several reasons. It may be doubted whether some of this class of objections can be properly presented for adjudication in this mode. (*Embury* v. *Conner*, 3 *Comst.* 523.) But, counsel having argued them, I will dispose of them as well as I can.

First. It was insisted that the fourteenth amendment of the constitution of the United States had been violated, for the reason that the State had, by that amendment, been deprived of the power of taking the property of its citizens without due process of law, which, it was claimed, meant by the ordinary forms of judicial action.

I am of opinion that this objection is not tenable. Surely, whatever the fundamental law of a State has established, as a rule for the protection of private rights, applicable alike to all its citizens, is due process of law. (*Westervelt* v. *Gregg*, 12 *N. Y.* 209. *Bank of Columbia* v. *Oakley*, 4 *Wheat.* 235.) The same provision on this subject was embodied in the constitution of the United States, before the adoption of the fourteenth amendment, and was also contained in the constitutions of this State of 1822 and

1846. Under these provisions it has been uniformly held, that the authority exercised by the legislature in this case was valid. These adjudications on the question, for the reason that this proceeding, if inhibited by the fourteenth amendment, was equally a violation of similar prior provisions of the constitution of the United States, and of this State, show that to be an erroneous conclusion.

Second. It was urged that the appointment of Mr. Wood as commissioner, was invalid, because it was made without notice. He was appointed upon the happening of a vacancy, occasioned by the resignation of a commissioner previously appointed. I think, in such a case, the court may, of its own motion, fill the vacancy, and that no notice is necessary. Neither the act of 1813, nor the amendatory act of 1839, makes any specific provision for such a notice, nor does it seem to be necessary to protect any right involved in the proceeding. The selection of the commissioners rests exclusively with the court, and no one is entitled to produce evidence, or to do any act for the purpose of affecting such selection. It is not perceived, therefore, that a notice would serve any purpose, except to delay the proceedings.

Third. It appears that the report before me is signed by only two of the commissioners, and that the other commissioner dissents from it altogether. It is insisted that the constitution of this State, requires the concurrence of all the commissioners. In a case before this court, at general term, in the first district, (*In the matter of the extension of Church street*, 49 *Barb.* 455,) this precise question was decided, in June, 1867. It was there held that such concurrence was not necessary. If I entertained any doubt on this subject, I should feel bound by that adjudication. But I quite agree with the reasoning upon which it was made. It is an undoubted rule of the common law that when a power is to be exercised by several persons, a majority, upon a meeting of all, are

competent to do the act. This rule was declared in the Revised Statutes, (2 *R. S. 555*, § 27,) and is still in force. Although the language of the constitution is, that the compensation " shall be ascertained by not less than three commissioners," yet there is nothing to indicate a design to change the mode of proceeding governing such bodies prescribed by the common law, and the statute. On the contrary, we are bound to presume that if such intention had existed it would have been expressed in terms; and this presumption is fortified by the provision contained in section 17 of article 1 of the constitution, whereby certain parts of the common law and the statutes in force in this State, not repugnant to the constitution, were continued in force. There is no repugnancy between the familiar and necessary rule referred to, and the constitution; for it is clear that all the commissioners aid in performing the duty assigned to them, whether their action produces unanimity or not, and whatever they do forms an element of the ultimate decision. Not being repugnant, the old rule mentioned, therefore, has been preserved. It abundantly appears that the dissenting commissioner met with his colleagues in the legal sense of that term. No formality beyond actual consultation is requisite. He attended the meetings of the commissioners for several months, and put in a dissenting report at the end of the proceeding. This is quite sufficient. The point here presented was not decided in the case of *The Board of Water Commissioners* v. *Lansing*, (45 *N. Y.* 19.) In fact the precise question was not involved in the case, for the reason that the statute upon which that case arose, was passed after the adoption of the constitution, and was not, therefore, affected by section 17 of article 1 of that instrument. It may be added that the provision of the constitution here invoked has no application to the duty of the commissioners in fixing a district of assessment, or in apportioning the amount assessed. That is an exercise.

Matter of Broadway Widening.

of the power of taxation, and not of the right of eminent domain, and the statute (*act of* 1813, § 88,) authorizing two commissioners to perform the trusts and duties imposed on all, governs this branch of the case. (*People* v. *Mayor &c.*, 4 *Comst.* 420. 41 *N. Y.* 139.)

Fourth. It was also objected that the report is invalid, because it was not made within six months after the making of the order appointing the commissioners, as required by the act of February 27, 1871. There being no negative words in the statute prohibiting the making a report after the time limited, and no injury appearing to have occurred to the objector in consequence of the omission to do so, this provision must be deemed directory merely, (*Cooley's Const. Lim.* 75, *et seq.*,) and a performance of a public duty, after the lapse of the period within which the statute directed it to be done, is in such a case good. (*Idem.*)

The remarks already made dispose of all the objections, excepting those presented by Mr. Sacchi, Mr. Thompson, Mr. Murtha and Mr. Bagley. I am of opinion that the claim of Mr. Sacchi is not well founded. The commissioners would not have been justified in awarding compensation for prospective losses, and by the terms of Mr. Sacchi's lease, his landlord is entitled to the "whole award for damages to the buildings and improvements on the premises" leased to him. I think, however, that the commissioners erred in not making an award to Mr. Thompson, and in not apportioning the rent to accrue upon the lease of Mr. Murtha. I am also of opinion that there was an error in the taxation of the bill of Mr. Bagley. The report, therefore, must be sent back, in order that these errors may be corrected. In all other respects it is confirmed.

The appeal from this order coming on to be heard at the general term in the first department, in November, 1872, held by Justices INGRAHAM, BRADY and LEONARD,

Justices INGRAHAM and BRADY announced that they were disqualified, by interest, from hearing the appeal, and would not sit in the case. At the request of the presiding justice, Justices LEONARD and DANFORTH, of the third department, sat in this appeal, with LEONARD as presiding justice.

*Lewis E. Delafield*, for the appellant, took the preliminary objection that under section 10 of the judiciary act of 1870, (*Laws of* 1870, *ch.* 408,) the court as thus constituted, could not hear this appeal, but must send it to another department.

The court, after retiring to consult, overruled the objection, and directed the argument to proceed.

*Mr. Delafield*, for the appellant, then made and argued the following points :

I. An appeal lies to the general term. (*Matter of the Commissioners of Central Park*, 61 *Barb.* 40, *and cases cited.*)

II. The majority report is the work of the two commissioners, Wood and Jones, without meeting, consulting or deliberating with their colleague, Mr. Hennessey. This is a fatal defect, and their report should not have been confirmed. 1. The laws authorizing this assessment are in derogation of individual rights, and must be strictly construed. If there has been any failure to comply with the requirements of the law, the proceeding is invalid. Jurisdiction is acquired step by step, and ceases upon any failure to comply with the acts. (*Hopkins* v. *Mason*, 61 *Barb.* 470, *and cases cited.*) 2. The law requires all the commissioners to meet and consult together, and any determination must be made at a meeting when all are present. (*Board of Water Commissioners* v. *Lansing*, 45 *N. Y.* 26. *Doughty* v. *Hope*, 3 *Denio*, 249. *S. C.*, 1 *N. Y.* 79. *Parrott* v. *Knickerbocker Ice Co.*, 8 *Abb.*, *N. S.*, 234, *and cases cited.*) The general statute prescribes that a majority may decide " upon a meeting of all the persons empowered."

(2 *R. S.* 575, § 27, *Edm. ed.*) In this case the majority report, and the notices show, that all the work was done by two commissioners. They read as if the subject had been committed to two; no reference is anywhere made to the third. It specially appears from the minutes, that the area determined on by the two commissioners was the result of an accidental omission of a clerk to impose any assessment upon the city. The new area was made, not because the first was wrong, or after any deliberation, but solely to avoid recasting the assessments. The assessment of $1,200,000 upon the city was increased to $1,500,000, in order to meet another clerical error. The question whether the city was benefited to this extent was never suggested. Neither act was the result of deliberation, and both were flagrantly illegal and arbitrary. It appears from the minority report, that the majority report was made, in all its important points, without meeting or consulting with Mr. Hennessy. 3. The learned judge below erred in supposing that it was sufficient consultation, if at some time in the course of the proceeding, all the commissioners met. In *The Water Commissioners* v. *Lansing,* (45 *N. Y.* 20,) they all met and could not agree, and afterwards two met, and made a majority report, which was therefore held bad. Mr. Hennessy had no notice to attend the meeting at which the area of assessment was adopted. Nor was it an adjourned meeting from one at which he was present. He refused, from the start, to sign the notices required by law, and so notified his colleagues. These facts are the reverse of those in the extension of Church street. (49 *Barb.* 458.) That case is either overruled altogether, or confined strictly to its own facts, by the decision in *The Water Commissioners* v. *Lansing,* (*supra.*) *The Board of Water Commissioners* v. *Lansing,* decides: 1st. That even though all met and consulted originally, they must all be present when the decision is arrived at and the report signed. 2d. That if two out of

three (which was not decided) can act, the two must show affirmatively that they rendered their decision at a meeting at which the three were present.    4. Unless all three commissioners are present, no determination can be had on any subject.    All they can do is to adjourn.   If it be said that in this way any one, by absenting himself, could defeat the ends of the commission, the answer is, that the commissioners have no power to remedy this evil themselves, but that upon a proper application, the court would remove the delinquent commissioner, and appoint another in his place.    This point has been determined in accordance with the above views.    In *Beekmen's case*, (1 *Abb. Pr., N. S.*, 451,) one of three commissioners absented himself from meetings of which he had full knowledge, and the court (Justice LEONARD delivering the opinion) held that the assessment was void in consequence.    In *The matter of Palmer*, (31 *How. Pr.* 43,) this decision was sustained.

III. By the constitution of 1846, the rule that a majority of the commissioners in these cases may decide, where all consult, is abrogated.  The compensation to be made "shall be ascertained by a jury, or by not less than three commissioners." (*Art.* 1, § 7.)   Where there are only three commissioners appointed, they must all agree in every act, and unite in its expression.  It is unnecessary now to inquire whether, if there were more than three, the compensation could be made by a majority which included as many as three.    The three commissioners being substituted for a jury, are governed by the same rules, and must all agree. (*Water Commissioners* v. *Lansing*, 45 *N. Y.* 20.)   Before 1846, no constitution of this State contained any clause permitting commissioners to take and assess property.    This provision altered the existing law ; it is repugnant to it, and does not come within section 17, article 1, of the constitution of 1846.    The constitution must be strictly construed.   There are no directory provisions in constitutions.

IV. The legislature have no right to say who, or what class of persons, shall be appointed commissioners. This power is confided by the constitution to the court alone. (*Ganson* v. *City of Buffalo*, 1 *Keyes*, 458. *Opening of Eleventh avenue, Davies' Laws*, 1244.) The act of 1871, section 4, requires the appointment of one of the former commissioners. Whatever be the true construction of this section, Judge Cardozo acted under its restraint, and did not exercise the discretion intrusted to him alone. He so states in his opinion. The appointment is unconstitutional.

V. The commissioner's report is not made within the time prescribed, and is void. 1. The act reads "which report shall be made within six months after the order referring the matter to the commissioners." (1 *Laws of* 1871, 93, § 4.) They did not report until ten months after this order. The wording of the act is imperative; the intention was the same. When the legislature of 1871 met they found the following state of facts : Proceedings to widen Broadway had been pending since May 17, 1869. It was a matter of public necessity, and delay was injurious to all interests. The act of 1869, section 2, (2 *Laws of* 1869, *p.* 2238,) recognized this by directing the report to be made within eight months. A report was made under that act, and confirmed by this court, under which it was insisted that the city had acquired title to the land, and the property owners to the awards. The greatest confusion of rights prevailed. Suits were pending in the State, and United States courts. The effect upon the whole upper part of the city was disastrous. All improvements and sales along Broadway stopped. Meanwhile the value of property to be taken was increasing immensely. If Broadway was to be widened, it must be done at once, or the act would make it impracticable. The increase of the cost between 1869 and 1871 was already so great that the limitation of the area of assessment prescribed in 1869 was left to the discretion of the

justice to remove in 1871. The legislature recognized those facts, and fixed the time in which the report should be made. Their intention further appears by the negative words in the act of 1871. The appeal must be taken within four months, and preference was given to it over all other business of the court. (§ 1.) Short notice of appeal was authorized. (§ 3.) The motion to vacate was to be on the short notice of five days. (§ 6.) The act took effect immediately. (§ 7.) To hasten matters, one of the former commissioners was retained. (§ 4.) The whole object of the act was to secure immediate action, and this was insured by requiring a report in six months. The limitation is mandatory, not directory. 2. The act of 1869 directed the commissioners to report in eight months. (§ 2.) The act of 1871, in six months. Whenever a statute directs an act to be done in a less time than was directed by a former statute, it is mandatory. For it appoints a new time instead of that formerly fixed. This must (if any language can) be considered imperative. (*Smith on Stat. and Com. Law*, § 667.) 3. Those statutory requisitions, which have been construed directory only, will be found not to affect the good of the people, and not to involve rights of property, but to relate to formal, mechanical or ministerial matters, where a compliance is a matter of convenience rather than substance. (*The People* v. *Schermerhorn*, 19 *Barb.* 558.) 4. In cases affecting assessments on property, the time fixed by law is mandatory. (*Thames Manuf. Co.* v. *Lathrop*, 7 *Conn.* 550. *Marsh* v. *Chestnut*, 14 *Ill.* 224.) 5. A justice must render judgment within the four days prescribed by the statute. After that his jurisdiction ceases. (*Young* v. *Rummell*, 5 *Hill*, 60. *Watson* v. *Davis*, 19 *Wend.* 371.) In the latter case, Bronson, J., holds a similar act imperative where there are no negative words. In the *Matter of Douglass*, the special and general terms of this court held, that an act requiring notices for local improvements to be pub-

Matter of Broadway Widening.

lished in all the corporation papers was directory. (58 *Barb.* 174;) the Court of Appeals held it mandatory. (46 *N. Y.* 42.) In assignments for the benefit of creditors, it is necessary that the assignee make the acknowledgment required by the statute before the title will become vested in the assignees. When a statute, though only affirmative in form, implies a negative, it is to be deemed imperative. (*Hardmann* v. *Bowen*, 39 *N. Y.* 196, 198.) 6. The intention of the legislature should control, absolutely, the action of the judiciary; where that intention is clear, the courts have no other duty to perform than to execute the legislative will. The intention is to be discovered in the statute itself, in other laws on the same subject, usage and contemporaneous history. It is not till these means fail, and the legislative intent is hopeless, that courts should assume any power of construing a statute either strictly or liberally. When the meaning is clear, they have no power to make modifications or exceptions. (*Sedgwick on Stat. and Com. Law*, 379.) 7. There is no authority to extend the time to report. A statute establishing a time in which an act shall be done "is unbending, requiring implicit obedience as well from the court as from its suitors. The court possesses no dispensing power." (*Wait* v. *Van Allen*, 22 *N. Y.* 321. *Humphrey* v. *Chamberlain*, 11 *id.* 274.)

VI. All the laws under which the city has sought to acquire title to that part of Broadway embraced within the limits of the designed improvement, are contrary to the constitution of the United States, and all the proceedings are void. 1. The fourteenth amendment is: "Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." (Article 14, § 1, amendments to the constitution of the United States, passed June 16, 1866.) The original article read: "No person * * * shall be deprived of life,

liberty or property without due process of law; nor shall private property be taken for public use without just compensation." (Article 5, amendments.) It was held, that article 5th was only a limitation of the power of the United States, and was not applicable to States. (*Baren* v. *Mayor, &c.*, 7 *Peters*, 243. *Withers* v. *Buckley*, 20 *How.* 84.) Hence, no question under the constitution of the United States could heretofore be made against our laws for acquiring land by eminent domain. The effect of article 14 is to limit the power of the States in the same manner that the power of the United States was already limited, and to confirm the States in their exercise of the right of eminent domain to " due process of law." 2. All the cases and elementary writers assume, that compensation must be made for private property taken for public use, under the provision that no person shall be deprived of his property without due process of law. (*Taylor* v. *Porter*, 4 *Hill*, 146. See cases collected, 1 *Abb. N. Y. Digest*, 149, (2).) The direct prohibition is only cumulative, and would have been included by implication in the first part of the 5th amendment. (*See cases above.*) 3. This brings us to the question, what is due process of law? The constitution furnishes the answer. " In suits at common law, where the value in controversy exceeds $20, the right of trial by jury shall be preserved." (Article 7 of amendments.) The common law alluded to, is the common law of England. (*United States* v. *Wonson*, 1 *Gall.* 20.) The term " suits at common law," includes all legal proceedings, whatever may be the peculiar form they assume or object they have in view, which are not of equity or admiralty jurisdiction. (*Parsons* v. *Bedford*, 3 *Peters*, 434, 446. *La Vengeance*, 3 *Dall.* 297. *Webster* v. *Reed*, 11 *How.* 437.) The term " due process of law," requires a trial by jury. (*Dew* v. *Hoboken*, 18 *How.* 272. *Matter of Adrian Jones*, 30 *How. Pr.* 446. *Taylor* v. *Porter*, 4 *Hill*, 140. *Van Horne* v. *Dorrance*, 2 *Dall.* 304, 312, 315. *The*

Matter of Broadway Widening.

*People* v. *Haws*, 37 *Barb*. 440.    *Westervelt* v. *Gregg*, 12 *N. Y*. 212.    *Bank of Columbia* v. *Okely*, 4 *Wheat*. 235, 243, 244.)    In this last case, an act of the legislature of Maryland incorporating the bank, gave it a summary process of attachment against its debtors, who, by express consent in writing, subjected themselves to the conditions of the act; and such act was held not repugnant to the constitution of the United States.    The court intimates that trial by jury cannot be dispensed with under the 7th amendment to the constitution of the United States, and under the words "due process of law," in the 5th amendment, except where waived by the suitor; and further, that in certain cases the policy of the law would forbid such waiver.    This case is no authority for the position of Judge Gilbert.    That learned judge misconceived the gist of the argument in supposing that the constitution, before the fourteenth amendment, contained any clause obligatory on the States.    In *Taylor* v. *Porter*, (*supra*,) it was held that the act of 1772, for laying out private roads, was unconstitutional, because the damages were not assessed by a jury.    The whole question was fully considered. The words "law of the land," as used originally in Magna Charta, in reference to this subject, are understood to mean due process of law, that is, by indictment or presentment of good and lawful men ; and this, says Lord Coke, "is the true sense and exposition of these words."    (3 *Story on Const*. § 789.    1 *Kent's Com*. 613.)    4. There is but one case sanctioning the assessment of damages by commissioners instead of a jury.    (*Beekman* v. *Saratoga and Sch. R. R.*, 3 *Paige*, 72.)    And in this case, the chancellor was careful to say : " The constitution of the United States does not come in question in this cause."    Judge Nelson, who dissented from the opinion in *Taylor* v. *Porter*, (*supra*,) made the same distinction.    (4 *Hill*, 149.)    The *dicta* in the cases in this State, holding or implying that the words due process of law do not necessarily import a jury trial,

were all decided under the peculiar phraseology of the constitution, that "trial by jury in all cases in which it has heretofore been used shall remain inviolate forever." Those authorities do not apply to the constitution of the United States. 5. Article 14, section 1, of the amendments, operates as a repeal of the New York laws permitting commissioners to take lands. The rule is, when a constitution passes taking away the power from the legislature to pass laws on a particular subject, this is equivalent to a repeal of existing laws on that subject. (*Sedgwick on Const. Law,* 597. *Ogden* v. *Saunders,* 12 *Wheat.* 278, *per Johnson, J.*) Article 6 of the constitution declares that it shall be the supreme law of the land. Amendments to the constitution are always retroactive, in their effect upon other laws. (*Bingham* v. *Cabot,* 3 *Dall.* 382. *Cohens* v. *Virginia,* 6 *Wheat.* 405, *et seq. Pierce* v. *Delamater,* 1 *Comst.* 17.)

VII. The majority report is fatally defective in this that the commissioners have adopted a new area of assessment, and not confined themselves to redistributing the sum to be assessed over the area of the former commissioners. All assessments for benefit outside of the area of the former commissioners are void. The two areas, viz., of 1869 and 1871, are shown on the map. To assess property from Waverly place to Twenty-third street, and on Lexington, Fourth, Fifth and Madison avenues, for the improvement of Broadway, between Thirty-fourth and Fifty-ninth streets, is legalized spoliation. This property is absolutely injured by the widening. The area of 1869 omitted all this property. That part of the city which is above Sixtysixth street, is most benefited, and is not assessed one dollar. The act of 1871 authorized the court, in its discretion, to do one of three things. 1st. To send the old report back to commissioners to amend any specific awards or assessments. 2d. To appoint new commissioners, with power to make a new area and new awards and assess-

ments, i. e., do the whole thing anew. 3d. To appoint new commissioners to make a new assessment, and leave the area as it was. Judge Cardozo so held. The first two Judge Cardozo refused to do ; the latter he did. His order directed "that the said commissioners of estimate and assessment, hereby appointed, shall forthwith proceed to amend and correct the report made to this court on December 28, 1870, and to make a new assessment, in whole, both as to awards for damage and assessments for benefit, &c." The order is explicit; the commissioners are "to amend and correct" an old report, not to make a new one. They were to correct it in certain specified particulars "as to awards for damage, and assessments for benefit." The question of area, was purposely kept from the new commissioners, for the following reasons: 1st. The act of 1869 prescribed a definite area. (§ 2.) 2d. The act of 1871 permitted a different area, but left the whole matter to be done "as the court or justice shall direct." (§ 4.) 3d. The order was made to correct the wrongs complained of, and otherwise left the work of the first commissioners untouched. The first area was universally acquiesced in ; it was just. The reasons why the order was set aside, are the frauds that existed in the awards. The order is carefully drawn, and distinguishes between the different duties of commissioners, which may well be done by different persons. 1st. Determining the area. 2d. Distributing the assessments. A familiar instance is the opening of roads and railroads. The filing of a map, or a jury viewing the ground, determines the area, while the damages are assessed by a different process. The order directs a new "assessment." An assessment is defined as "the act of fixing the amount of damages." Read in this way, the order is reasonable. As the commissioners interpret it, it is meaningless. If they had power to make new awards, new assessments and a new area, they could do all that an original com-

mission could do, and all allusion to "amending and correcting" the report, and the limitation of the new assessments to "awards for damage and assessment for benefit" is meaningless. If this was intended, why was not the usual order to establish an area, to estimate, assess and report, &c., entered?

VIII. The appointment of commissioner Wood was invalid, because made without notice. (*Valentine's Laws, p.* 1223, § 2.)

IX. The minority report and the minutes form part of the record. By the act of 1813 commissioners were not obliged to file any of the papers they used, but only their report. (*Valentine's Laws, p.* 1201, § 182.) This enabled commissioners to conceal frauds and irregularities, and to meet this evil, in 1839, an act was passed requiring the commissioners to file an abstract of their report, their map and "also all the affidavits, estimates and other documents which were used in making their report." (*Valentine's Laws, p.* 1224, § 4.) Any person might object to the abstract so filed, and present statements and affidavits against it, and it is made the duty of the commissioners to transmit to the court all such statements and affidavits. (*Idem.* § 5.) The words, "other documents," in the act of 1839, include the "minutes of the commissioners' meetings" and the minority report. The act of 1862 specifies some of these "other documents," as being "maps, profiles, boundary lines, diagrams, abstracts, surveys and minutes of the proceedings." (*Valentine's Laws, p.* 1232, § 5.) It is absurd to say that a commissioner appointed by the court to do a particular act cannot report what has been done, to the court appointing him. He is bound to do so; it is his duty. Mr. Hennessy did so report to the special term. Mr. O'Gorman himself presented this report with the majority report. The court received the minority report, and argument was had, and a judgment and opinion given based upon it. It is too

late to object that it forms no part of the record. A minority report was received in *The Water Commissioners* v. *Lansing*, (45 *N. Y.* 20.)

X. Where by one proceeding lands are taken and assessments are laid, the whole is to be deemed an exercise of the right of eminent domain. The assessments go to pay for the land. The cases cited on the right of taxation are inapplicable. The objection is to the widening *in toto*. Any one who is assessed for benefit may object to the report, for it throws a burden on him. (*Matter of Thirty-ninth street*, 1 *Hill*, 191. *Coles* v. *Trustees &c.*, 10 *Wend.* 659.)

XI. The assessments on the appellant's lands should be vacated. If this cannot be done, the whole proceeding should be vacated.

*Richard O'Gorman* and *A. J. Vanderpoel*, for the respondents.

*By the Court*, LEARNED, J. The general term, before which this matter came, was composed of one of the justices assigned to the general term in the first department and two justices from another district. The two other justices assigned to the general term in the first department were, by reason of interest, incapable of sitting on the appeal. The appellant objected that under section 10, chapter 408, laws of 1870, the appeal *must* be sent to some other department.

First. In construing such a statute, its general meaning is to be considered. The object of the legislature was to provide a court competent to hear appeals in every case. Section 4 of the same act provides for the calling in of other justices. And, as all the justices of the Supreme Court have co-ordinate authority throughout the State, the statute referred to is only an assignment of some to a special duty. None of the justices actually holding this general term were incapable of sitting on this appeal. It

seems to be an unreasonable construction to say that because two justices who are *not* holding court are incapacitated from acting, therefore the three who are holding court, and who are not interested in the matter, shall not act. It can hardly make much difference whether the appeal goes to another department, or another department comes to the appeal.

*Second.* The next objection is that the report was signed by only two of the commissioners. The case of *Water Commissioners v. Lansing* (45 *N. Y.* 19,) holds that in the case then under consideration, all of three commissioners must have been present when they rendered their decision. The case arose on the language of chapter 177, laws of 1856, as amended by chapter 744, laws of 1868. Those laws do not contain the peculiar provision, found in the act of 1813, under which the commissioners were appointed in this case. That act expressly authorizes two of the commissioners to act, and declares that their acts shall be as valid as the acts of all.

It is urged by the appellant that this provision is abrogated by the constitution of 1846, art. 1, sec. 7. That section requires compensation to be ascertained by a jury, or by not less than three commissioners. But in the case of *Cruger* v. *H. R. R. R.* (12 *N. Y.* 190,) it was held that, notwithstanding this constitutional provision, the legislature might authorize a decision by a majority of the jury appointed in such cases. And if the legislature can authorize a majority of a jury to decide, why can they not authorize a majority of the commissioners to do the same thing? The cases are so nearly analogous, that we are bound by that decision. This, too, was the decision in the *Church street case,* (49 *Barb.* 458.) The circumstances were very different in the *Beekman case,* (1 *Abb. N. S.* 451,) in which a contrary rule might seem to have been adopted.

*Third.* An objection is made that all the proceedings are contrary to the fourteenth amendment of the constitution

of the United States. This objection has been overruled in another case before the general term of this department, and it is not, therefore, necessary to examine it here.

Fourth. The provision requiring the report to be made within six months was not complied with. But we agree with the learned justice, whose order is appealed from, that this was to be deemed merely directory. It was not a matter of jurisdiction. The proceeding was properly in the Supreme Court. The commissioners were only officers of the court, and the jurisdiction was not lost by the delay.

Fifth. An objection is taken that the provision in the fourth section of chapter 57, laws of 1871, by which a majority of the new commissioners were required to be other than the former commissioners, was unconstitutional. The ground is, that the constitution has confided the power of appointing commissioners to the court. And it is urged that the judge who made the appointment, construed the act as requiring him to appoint one of the former commissioners. It does not seem that the judge considered this imperative. Even if he did so consider it, an erroneous construction could not make the law unconstitutional. The law does not positively require the appointment of any one of the former commissioners. It excludes two of them from the appointment. Now, the exclusion of two men out of all the competent inhabitants of the State (or, at least, of the city) cannot, in any reasonable sense, be construed as a violation of the constitutional provision giving the appointing power to the court. It is a most common practice to exclude from a jury one who has, as a juror, heard the case tried before. If the statute had provided that no convicted felon should be appointed commissioner, would any one say that such a restriction was unconstitutional? Constitutions are to have a broad, not a petty construction. (*People ex rel.*

*Potter* v. *Jackson*, 47 *N. Y.* 375. *People* v. *Fancher, not reported.*)

Sixth. It is objected that the commissioners have adopted a new area of assessment. The act of 1871 authorized the court to vacate the order of confirmation, and to refer the matter back to commissioners. It directed the commissioners to amend and correct said report, or to make a new assessment, in whole or in part, as the court should direct. The order granted April 3, 1871, vacated the order of confirmation, and directed the new commissioners to amend and correct said report, *and* to make a new assessment in whole. The act further authorized the commissioners, in making such corrected or new assessment, to assess any and all property which they deem benefited, and repealed the former limitation. Whatever then the language of the order was, the act is plain. The commissioners could go beyond the former area.

Seventh. It was objected that no notice was given of the motion for Mr. Wood's appointment. The court had acquired jurisdiction of the proceedings by the original publication of the notice. The act of 1871 authorized the court to refer the matter back to new commissioners. This was to be done on the vacating of the former order of confirmation upon a five day's notice. (§ 6.) The court having under this act appointed commissioners, and one of them having declined to act, it seems plain that the same court had power to supply his place. Want of notice could be only an irregularity.

Eighth. As to the objection that the land of one of the appellants was disproportionately assessed, the court cannot entertain it. That was a matter for the commissioners. (*Central Park*, 16 *Abb.* 56.)

Ninth. The appellant Sacchi, a lessee of certain premises, claims that he should be allowed for certain damages and loss of rents and profits arising out of his sub-letting. It is not disputed that the value of the lands was awarded

to the landlord, and the value of the buildings thereon was (according to the provisions of the lease) awarded to Mr. Sacchi. This, then, makes the total value of the property. When the city pays for the land all that it is worth, and for the buildings all that they are worth, then, certainly, nothing more can be asked.

Among the papers on the appeal is what is called a minority report. To prevent misapprehension we may say, in passing, that we do not think any such paper can properly come before the court. There can be only one report, and that is the report of the whole, or a majority, of the commissioners. It may be doubted whether one who is only assessed and whose property is not taken, is in a position to assert several of the objections above mentioned. But we do not deem it necessary to decide that point.

The order appealed from should be affirmed, with costs.

[FIRST DEPARTMENT, GENERAL TERM, at New York, November 4, 1872. *Leonard, Learned* and *Danforth,* Justices.]