### In re APPOINTMENT OF PARK COMMISSIONERS.

*(Superior Court of Buffalo, General Term.   June 29, 1888.)*

1. APPEAL—WHAT ARE APPEALABLE ORDERS—SUPERIOR COURT OF BUFFALO.          .
   In proceedings under Laws N. Y. 1884, c. 159, to condemn land for a public park, an appeal lies from an order of the special term of the superior court of Buffalo, confirming the award of the commissioners appointed to ascertain the compensation to be paid the owners of the land taken, as Code Civil Proc. §§ 1356, 1361, provide that an appeal may be taken to the general term of a superior city court from an order affecting a substantial right made in special proceedings at special term, unless the act under which the proceedings are taken especially provides that the order cannot be reviewed.

2. EMINENT DOMAIN—INJURY TO LESSEE—MEASURE OF DAMAGES.
   In proceedings to condemn, for a public park, land in possession of a lessee for a term of years, where the lessee has erected buildings on the land which would be part of the realty if the tenants owned the fee, the measure of damages to the lessee is the value of the buildings, though the lease stipulates that the lessee may remove the buildings at the end of the term.

3. SAME—TAKING LAND SUBJECT TO LEASE—APPORTIONMENT OF DAMAGES.
   In such a case it is proper to deduct the sum awarded the tenants for their leasehold interest from the sum awarded the owners as the value of the soil, as the value of the land is all that can be awarded the owner, and the leasehold forms a part of it.

Appeal from special term.

In the matter of the application of the city of Buffalo for the appointment of commissioners to ascertain the just compensation to be paid to the person or persons or corporations interested in lands to be taken for park purposes. Appeal by Briggs & Webb and Whitmore & Rathbun, owners of such lands, from an order of the special term of the superior court of Buffalo confirming the report of commissioners herein.

Argued before BECKWITH, C. J., and HATCH and TITUS, JJ.

*Charles F. Tabor*, for appellants Briggs & Webb.   *Warren F. Miller*, for appellants Whitmore & Rathbun.   *Frank C. Laughlin*, for respondent, City of Buffalo.

HATCH, J.   This proceeding is taken by virtue of chapter 159, Laws 1884, and has for its object the acquiring of certain lands for a public park in the city of Buffalo.   It is contended by counsel for the city that no appeal lies from the order of the special term, affirming the report of the commissioners, to this court.   Such claim finds support, if at all, in the fact that the act under which the proceeding is instituted furnishes a complete system, covering all the proceedings intended to be authorized, and is consequently removed from the force and operation of general laws.   It is not questioned but that the order of confirmation affects a substantial right.   It is therefore appealable (Code, § 1356) unless exempted from the operation of this section.   If appealable, it brings up for review all preceding orders made in the proceeding necessarily affecting the final order appealed from.   Id. § 1358.   The only limitation to the right of appeal from this order is found in section 1361, Code, which provides that the right to appeal from an order is not conferred "in a case where it is specially prescribed by law that the order cannot be reviewed." The language of section 1356 is: "An appeal may be taken to the general term of the supreme court, or of a superior city court, from an order affecting a substantial right made in a special proceeding at a special term," etc.   The order appealed from was made at special term, under the authority of a special statute.   It therefore falls within the provisions of the section.   In the language

of Judge FOLGER: "It is a statutory, and therefore it is a special, proceeding." *In re Ryers*, 72 N. Y. 1–4. *In re Brady*, 69 N. Y. 219, Judge EARL wrote: "The right to review the decision of a single judge sitting at special term, in a matter affecting substantial rights, being general and fundamental, it must be deemed to exist, unless the intent to destroy it is expressed with great clearness." That was an appeal from an order discharging an insolvent debtor from imprisonment upon the making of an assignment of all his property. The statute was silent as to the right of appeal. The court held the order appealable, distinguishing statutes of this character from those which provide that the decision of the supreme court shall be final and conclusive. *In re Swan*, 97 N. Y. 493. The cases cited by counsel for the city (*Railroad Co. v. Marvin*, 11 N. Y. 276; *In re Canal Co.*, 69 N. Y. 209; and *In re Commissioners*, 50 N. Y. 493) are not in conflict with the cases first cited. They all arose on appeals from statutes which expressed in terms that the decision of the supreme court should be final and conclusive, and the court in each case based its decision upon that language, holding that the legislature, by the use of the language, had limited appeals to the supreme court. In the case last cited the court expressly recognized this distinction, as they had entertained appeals from orders appointing commissioners by virtue of the statute then under consideration, for the reason that such orders involved the right of the petitioners to take the lands, and the statute did not declare that such orders should be conclusive upon the rights of the property owners. Id. 493. It is suggested that the language, "the court shall confirm the report," of the act, indicates an intent to make the report of the commissioners conclusive, binding upon the court to confirm. I do not think the act susceptible of such construction. It is not reasonable to suppose that the court, being vested with the power to appoint commissioners, and being required to pass upon the legality of the proceedings before appointment, which proceedings are to be conducted according to legal rules within the provisions of the statute, should eventually be reduced to the mere perfunctory or formal duty of confirming the report, no matter to what extent the statute had been contravened or legal requirements disregarded. It can scarcely be possible that the court who appoints, and to whom the commissioners must report, which report is without vitality until confirmed, shall only perform the formal function of ordering it confirmed. I think the true interpretation of the statute is that the court is to examine the report, and, if it determines that the proceedings have been conducted according to law, then to confirm. It was not intended to be a mere formality, but a judicial determination. Else it places the commission above the court, making their creator subordinate to their determination. This is opposed to the exercise of the judicial function, and utterly destructive of judicial supervision in the review of the determination of a subordinate tribunal. *In re Railway Co.*, 82 N. Y. 95; *In re Railroad Co.*, 93 N. Y. 385. Such being the interpretation of the statute, and it being silent upon the subject of the right of appeal, and no language used which indicates an intent to restrict that right, it consequently becomes subject to the provisions of the Code, and is appealable.

The appellants Briggs & Webb are lessees of a portion of the property owned by Whitmore & Rathbun, under a written lease bearing date April 1, 1882, recorded in Erie county clerk's office, for the term of five years from the said 1st day of April, with a privilege of renewal for the further term of five years; said renewal to be evidenced by giving a written notice to the lessors at least six months prior to the expiration of the first term. The rent reserved for the first term was $500 per annum, and for the renewed term $600 per annum. The tenants have exercised their option by giving the required notice for renewal. The lease vested the lessees with a contingent right of purchase. It further provided that the lessees should not underlet or assign, and should use said premises for ice-houses, harvesting ice, and such uses as were

necessary in the business of ice-dealers.   The lease contemplated the erection of buildings and appliances for ice purposes, as might be required in the prosecution of the business, which buildings and appliances were to be and remain the property of the lessees, with the right of removal upon the expiration of the term.   In conformity therewith, as the record shows, the lessees did erect thereon large buildings, and place therein necessary appliances and fixtures for the prosecution of said business.   As appears by the testimony of witnesses called upon the part of the city, such buildings, so erected, were worth upwards of $12,000, and by witnesses called by the lessees the value was placed at over $19,000.   The value placed upon the appliances and fixtures by witnesses called for the lessees was nearly $4,000; and an offer was made to prove that necessary filling upon the land to make it available for the contemplated purpose was worth the sum of $5,000; thus showing the estimated value of the aggregated improvements made by the lessees to be upwards of $21,000.   The structures, appliances, and fixtures, as disclosed by the testimony, were of a solid and permanent character, and, if owned by the owners of the soil, would pass as real property under a deed.   The commissioners, in making their award, rejected all elements of damage above mentioned, basing their determination, in awarding damages, upon the value of the unexpired term of the leasehold interest, for which they awarded the sum of $1,000 per annum, amounting in the aggregate to $7,000.   The court below has confirmed this award, basing its decision upon the ground that the doctrine of landlord and tenant, regarding erections made by a tenant upon leased property for the purpose of trade or business, must obtain, and that the buildings and appliances are personal property.   If such is the rule of law applicable to this case, then the authorities and reasoning of the learned judge below amply vindicates his conclusion.   I am, however, impelled to dissent from such view.   It is said by Judge ANDREWS in *Schuchardt* v. *Mayor*, 53 N. Y. 202, "that compensation shall be made as well for buildings erected upon the land as for the soil.   Whatever is land, within the general and legal meaning of the term, is to be estimated in ascertaining the compensation." Id. 208.   The structure of the tenant here is embraced within the general and legal meaning of the term "land."   At least, this would be so if the ownership were in one person.   Mills, Em. Dom. § 223, lays down the rule thus: "When land is condemned, the condemnation carries with the land all the erections upon it, including buildings, fences, gravel, stone or wood paving, planks, flag-stones, bridges, culverts, guard or lamp posts, etc."   This structure, then, is inherently land,—such property as the statute says may be taken, and such property as can be condemned under eminent domain proceedings. Being of such character, does the fact of ownership in a person who does not own the soil upon which it rests so change its inherent character that compensation may not be awarded for it?   In *Ombony* v. *Jones*, 19 N. Y. 240, Judge COMSTOCK says: "The general maxim of the law is that whatever is fixed to the realty becomes a part of it, and partakes of all its incidents and properties.   This is the rule even in relation of landlord and tenant.   Many exceptions have been ingrafted upon it, but the rule itself has not been reversed, and therefore it must not be lost sight of."   The law, as here declared, has not been changed or modified by subsequent decision.   As I understand the spirit and intent of this decision, it is to enforce the common-law rule as applicable to all cases where the exceptions do not clearly modify it.   The fact that as between certain parties, on account of their agreement or relation, a rule of law is modified, as to them, does not extend to or change the rule for the benefit of persons who are strangers thereto, and who have acquired no rights or liens.   As to these persons, the general rule finds force.   The agreement of the parties is the modifier; and, where no such agreement or relations exist, there can be no modification.   The inherent character of this property is real estate; no agreement can change that.   But the lessors and lessees

say: "As between us, we will treat it as personal property." Such agreement does not change its character; it still has the same inherent properties. The confusion arises by calling property essentially real, personal property. It is true that the lessor could not convey it against the will of the lessee, but he can with his consent, and a deed from the owner of the soil would pass title to it. *Mott* v. *Palmer*, 1 N. Y. 564. No person can compel the lessee to consent to such transfer of his rights. But now a superior power steps in, and says to the owner and lessee: "For the benefit of the public, you must surrender your rights." If, by the lessees' consenting to a sale and transfer, the deed would vest in the purchaser perfect title to the whole as real property, how can a different result be arrived at when the purchase is enforced? The city, by instituting these proceeding, occupies the position of a purchaser; and that, whether the parties consent or not. The property taken must be taken as it exists at the time the proceedings are instituted. *Livingston* v. *Sulzer,* 19 Hun, 375; *In re Wall Street*, 17 Barb. 617. As the property now exists, it is real property, and so remains until the structure is severed from ·the soil. This act the tenant is not bound to perform at the time the property is taken. As it then is, so it may always remain; and, when the city makes the compensation for the property, it steps into all the rights possessed by both parties. It may be that the structure is not of so much value, because eventually to be removed; but that furnishes no reason why it should not be taken, and its value, be. it much or little, awarded. All structures erected upon land may be removed. As time progresses they grow less valuable by decay. But no one has thought, because they may be removed, and will ultimately perish, that their just value is not to be awarded as they exist at the time they are taken. When this structure is removed, it is as valuable to the city as to the tenant. The city loses nothing. It simply forces the tenants to sell, and steps into their place; and, when it has extinguished both titles, it has nothing but land,—such property as the statute contemplates shall be taken.

The value of the use°of the land, while an element of damage to be considered and awarded, fails to meet the true measure of damage for another reason. The effect of the proceeding is to destroy the enjoyment of the leasehold interest by the tenant. It then becomes the primary duty of the commissioners to make a just and equitable award for the value of the property taken. It has been many times held that these proceedings do not destroy the covenants contained in a lease. *Folts* v. *Huntley*, 7 Wend. 211; *Mills* v. *Baehr*, 24 Wend. 254. In *Re Williams and Anthony Streets*, 19 Wend. 678, Judge BRONSON said: "I do not see how there can be a just and equitable estimate of the loss and damage of the tenant without taking into consideration all the covenants and conditions in the lease which affect his beneficial interest in the lands." Id. 682. This lease vests a contingent right of purchase in the lessees of the property. Had this contingency at any time happened, the lessees would have become the owners of the whole property, and continued their business indefinitely. It added value to the lease, as it gave the tenant an option paramount to the right of any purchaser anxious to obtain title. The intervention of the city cuts off entirely this right, and forever bars the possibility of its happening. It cannot, therefore, be said that the value of the use of the land, with the right to remove the buildings, measures accurately the rights of the tenants under this lease. It is at once apparent that the buildings torn down are of much less value to the tenant than when standing. As they are now they may always remain; and thus the tenant, by this covenant, obtains the highest value contemplated by him at the time of the execution of the lease. When he is forced to part with his right, justice requires that he shall be compensated for all his damage as near as may be. Had he obtained title to the land, then no question would have arisen but that the measure of damage would be the value of the whole. As he is cut off from such right, or the

possibility of it, the true measure of his damage would seem to be the value of his improvements, in addition to his leasehold interest. Such rule places the city in the precise position of the tenant. No reported case in this state is called to our attention, and none found after diligent search, where the right of the tenant to receive compensation for permanent improvements made by him upon leased land, taken by right of eminent domain, has been denied. Some cases have assumed the right to exist. In *Re Broadway*, 63 Barb. 572, the commissioners made an award to the owners for the value of the land, and to the tenant the value of the buildings. The case, as reported, does not give the terms of the lease under which the tenant held. The award was confirmed; LEARNED, J., saying: "The appellant, Sacchi, a lessee of certain premises, claims that he should be allowed for certain damages and loss of rents, and profits arising out of his subletting. It is not disputed that the value of the lands was awarded to the landlord, and the value of the buildings thereon was (according to the provisions of the lease) awarded to Mr. Sacchi. This, then, makes the total value of the property. When the city pays for the land all that it was worth, and for the buildings all that they are worth, then, certainly, nothing more can be asked." In *Livingston* v. *Sulzer*, 19 Hun, 375, the plaintiff was the owner of the fee, and the defendant, Sulzer, was the assignee of a lease of the premises, which lease provided for the erection of buildings subject to the approval of the plaintiff, and which were to be paid for by him, at a fair valuation, upon the expiration of the term. Certain wooden buildings were erected by the defendant, resting upon brick and stone foundations. Within the walls, below the wooden structure, was constructed a kitchen and other rooms, in which were placed ranges, boilers, gas-fittings, and other fixtures which were used for the purposes of the business carried on by the tenant. Subsequent to the erection of the structures, and before the termination of the lease, the city of New York, by proceedings under the right of eminent domain, condemned this property for the purposes of a public park. The commissioners awarded to plaintiff and his remainder-man the value of the lands, and to the tenant the value of the buildings. Plaintiff made claim to the latter award, and commenced an action, praying that said award be adjudged to him. The money was paid into court, and the case referred. The referee determined that the value of the wooden structure was two-thirds of the sum awarded as the value of the buildings, to which the tenant was entitled; as to the brick and stone foundations, and the fixtures placed therein, they were the property of the plaintiff, who was entitled to that portion of the award. The basis of the referee's determination was upon the law of fixtures, and the relation of landlord and tenant with respect to property leased for the purpose of trade or business. Upon appeal, the general term, First department, reversed the judgment upon the ground that the case was disposed of upon erroneous principles. The court held that the rights of the respective parties was to be determined by the terms and conditions of the lease. Judge DAVIS, speaking for the court, said: "As we look at the facts of the case, it seems to us that, at the time the city took possession of the property for public use, the tenant must be regarded as the legal and equitable owner of the structures which he had placed upon the property. The covenant in the two leases just referred to relates to the whole building, including as well the foundation as the superstructure; and there seem to us no reason to doubt that, at the expiration of the renewal lease, the tenants would have the right to claim payment for the entire building at such valuation as is provided for in the lease. But the intervention of the proceedings under which the property has been taken by the city cuts off the exercise of such rights. The property must be taken to be, so far as relates to the respective rights of the parties, precisely as it was at the time of taking." So far as the character of the property taken under the condemnation proceedings is concerned, there is no legal distinction between this case and the one now

under consideration. There is no substantial difference in the two statutes under which the proceedings are instituted. Both are to take lands, and both provide for a just and equitable award to the persons whose property is affected or taken. In the case cited the buildings were to be paid for at the expiration of the term; but, in the event of a failure to pay, the right of removal existed. Consequently there is no legal distinction between the right to remove and the right to receive compensation for the buildings at the end of the term. *People* v. *Assessors*, 93 N. Y. 308–312. The test in each is, what is the character of the property? It is none the less the property of the tenant, although never to be removed; but such ownership does not make it personal property, although the right of removal may be exercised and exists. In *Re Railroad Co.*, 35 Hun, 306, the general term in the Fourth department affirmed an award to the tenant for the value of his improvements in a similar case. It is true that in none of the foregoing cases was the precise question here considered the subject of discussion, but in each the question presented was involved. Learned and able judges sat in each court. They assumed that the commissioners possessed the power to make the awards as the respective interests should appear. Such assumption is entitled to weight, and more especially is this true where proceedings of this character have multiplied almost beyond number, and no one has before questioned its correctness. We are cited to the case of *Schreiber* v. *Railroad Co.*, 115 Ill. 340, 3 N. E. Rep. 427, as deciding a contrary doctrine. The expressions there used seem to support what is claimed for it; but in that case, at the time of the application, the lease under which the tenant held had expired, and he had no interest in the premises. Before the land was actually taken, he had enjoyed all that, under the lease, he had a right to enjoy. 'He therefore had no interest. It was not necessary to a decision of the case that the court should pass upon the question; but, if it were otherwise, we should regard it as opposed to sound reason and the tendency of authority in this state.

I conceive the true rule to be that, when property is taken by the right of eminent domain, the doctrine of fixtures and erections, as applicable to the relation of landlord and tenant, have no application; the question being, is the property taken of the character of real estate, and is it inherently real property? If it is, then it becomes the subject of appropriation, and not only may, but must, be taken as an entirety, as it then exists, without reference to the respective ownerships or parts of such real property. This property being of a character which is the subject of appropriation, it became the duty of the commissioners to determine its value, and award that sum to the respective parties in interest. This has not been done. The basis of determination was the rental value of the leasehold interest for the unexpired term. So far as they fairly considered this element, their award is not open to question. It is an element of value justly to be considered. The undisputed testimony, however, shows that the buildings upon the property were of the value of over $12,000. For this no award whatever was made. As shown by the record, this property was treated as property essentially personal, and not the subject of condemnation; consequently its value was not considered. As already seen, this view is error, and must be corrected by a new award. For the same reason no consideration was given to the value of the fixtures in the building. As appears by the testimony, the engine and boiler was placed in a separate structure attached to the main building, resting partially upon piles driven into the ground, and partially upon the soil. There was brickwork around the boiler, with a brick arch and a brick floor,—the whole set in permanently. The engine is set upon timbers, and is connected with the shafting which is fitted into the building, and through this the power is applied which draws the ice up the galleries. All of these fixtures were placed in this structure with reference to the building, and for the particular use to which it is put. The same is true with respect to the scales for weighing ice.

Within the authorities, this property is inseparable from the building, and forms an element of damage to be considered.   *McRea* v. *Bank*, 66 N. Y. 489; *Mills Co.* v. *Quinn*, 76 N. Y. 23.

The commissioners, in their award, have deducted the sum awarded the tenants for their leasehold interest from the sum awarded the owners as the value of the soil.   This was proper, as the value of the land is all that can be awarded the owner, and the leasehold forms a part of it.   *In re Railroad Co.*, 35 Hun, 633–635; *In re William and Anthony Streets*, 19 Wend. 678, 684, 685.   It does not appear that they deducted from the sum awarded as the value of the leasehold interest the rent reserved in the lease.   This is a proper charge thereon, and it should appear that the owners, in some manner, received the benefit.   But, for reasons already suggested, the order confirming the award of the commissioners must be reversed, and new commissioners ordered appointed to proceed and assess the damage, and apportion the sums to be paid the respective owners as their interest shall appear.

BECKWITH, C. J., and TITUS, J., concur.