CATHARINE SCHUCHARDT, Respondent, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellants.

The authority conferred by the act " to reduce several laws relating to the city of New York into one act " (chap. 86, § 178, Laws of 1813) upon the corporation of the city of New York to take lands for streets (not laid out under the act of 1807) by coercive proceedings against the owner, contemplates the acquisition by the city of the entire title, and compensation is to be made as well for the buildings upon the lands as for the soil.

Without the consent of the owner the commissioners of estimate and assessment have no right to restrict the assessment to the value of the land, compelling the owner to retain the fixtures on the premises as chattels and exempting the city from the obligation to take and pay for them as part of the land.

The owner, however, may waive his right and assent to retain the buildings as a chattel interest, in which case they will be regarded as severed, and the city acquires title to the land subject to the right of the owner to remove the buildings.

Accordingly, *held*, where the commissioners of estimate and assessment by agreement with the owner, in their report assessed the value of land required for street purposes, reserving to the owner the title to the buildings thereon and the right to remove them, which report was confirmed by the court without objection, that the city was liable to the owner for the subsequent conversion by it of the materials of the buildings.

(Argued February 18, 1873; decided September 23, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment entered upon an assessment for damages by a jury under an order of the General Term reversing an order of Special Term sustaining demurrer to plaintiff's complaint and

directing judgment upon the complaint. (Reported below, 59 Barb., 298, and 62 Barb., 671.)

This action was brought to recover the value of the materials of certain buildings alleged to belong to plaintiff and to have been converted by defendants.

The complaint alleged, in substance, that in 1867 the plaintiff owned a certain lot in the city of New York, on the Church-street extension map, together with a building on a portion of it, composed of brick, stone, iron and timber, about thirty feet in width by fifty-two feet in depth, and five stories high. That proceedings were duly instituted by the corporation of the city for the extension of Church street; that the commissioners for the estimate of damages reported to the Supreme Court that the "lot, piece or parcel of land" in question, would be required for the said extension. They also reported that the damage of the plaintiff in consequence of her relinquishing the said lot with the improvements thereon, for the purpose of said extension, and of her removing the building from the lot, which, by the terms of the report they required her to remove, amounted to $29,040, and to this report, thus understood, the plaintiff consented, which report was confirmed by the Supreme Court.

The complaint averred that the commissioners who made said report, and the court that confirmed it, both intended and meant by the report, and by its confirmation, to exclude from their estimate of plaintiff's damages, by reason of the taking of her lot, the value of the old materials of the building then standing on it, and both intended and meant that she should retain her title to the materials of said buildings, and should remove them from the lot at her own expense and for her own benefit. That as the commissioners did not need the building for the extension, they did not take it, nor pay for it, so far as it was valuable as old building material, but merely paid the owner for the lot and the building as a building, less the value of the building as old material, and for the expense of removing the materials of the building from the lot.

The complaint further states that, except in case of special legislation, the view above expressed is in accordance with the uniform practice in respect to buildings standing on lots taken in the case of street openings in New York city, heretofore, when the reports have been similar in phraseology to the phraseology of the one in question. It further states that before the report was presented to the court for confirmation, the commission stated to the property owners interested that the report gave them the right to the materials of the buildings, and the right to remove them from the lots taken, and thereby prevented them from making any objections to its confirmation by the court, and secured their acquiescence in it. That had it not been so agreed and understood, plaintiff would have objected to such confirmation.

The complaint then states that the plaintiff has always been ready to remove the materials of the building from the lot in question, but that the defendants, instead of allowing her so to do, on the 17th of April, 1869, converted those materials to their own use.

The defendants demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action; the ground of the demurrer assigned by counsel was, that inasmuch as by section 178 of the act of April 9, 1813 (see Davies' Laws relative to the city, p. 534), the report, when confirmed, is declared to be final and conclusive on both appellant and respondents, and inasmuch as that section further declares that on the final confirmation of the report by the court, the corporation, the respondents, became seized in fee of all the lands, tenements, hereditaments and premises in the report mentioned, that should be required for the purpose of extending the street in question; that therefore, by force of the law itself, and the confirmation of the report under the law (the report having declared that the lot would be required for the extension), the title to the building in question, as well as that to the lot, was conclusively and indisputably vested in the respondents. The justice below sustained the demurrer, and held that the commissioners

had power only to make an award, and that any provision
contained in the latter part of the report, though intended
as part of the award, was nevertheless null and void.
The appeal to the General Term was first argued before
the General Term in the first judicial department. Presid-
ing Justice INGRAHAM delivered an opinion in favor of
reversing the orders and judgments. Justice BARNARD dis-
sented therefrom. Justice CARDOZO tried the action at Special
Term, and was therefore disqualified to sit on the appeal.
Therefore the case was ordered to be heard at the General
Term in the second department, where the judgment was
reversed and judgment ordered in favor of plaintiff, with
leave however to defendants to answer in twenty days.
Defendants did not answer, and plaintiff obtained a Special
Term order directing the damages to be assessed at circuit,
and upon such assessment judgment was perfected, from
which judgment this appeal arises.

*A. J. Vanderpoel* for the appellants. On the confirmation
of the commissioners' report the corporation became seized
in fee of the land, tenements, hereditaments and premises.
(2 Hoff. Laws, 804; § 178 act of 1813; *Mott* v. *Palmer*, 1 N.
Y., 564; *Brockett* v. *Penn. and Ohio R. R. Co.*, 14 Penn.
St., 241; *Bennett* v. *Boyle*, 40 Barb., 551, 556.) The only
jurisdiction the commissioners had was to award in money
the value of the lands, including the buildings. (*Emery* v.
*San Francisco G. L. Co.*, 28 Cal., 345; *Brady* v. *Mayor*, 2
Bosw., 173; S. C., 20 N. Y., 312; *Appleby* v. *Mayor*, 15
How., 428; Laws 1857, 874, § 38; *Bonesteel* v. *Mayor*, 22 N.
Y., 162; *Halstead* v. *Mayor*, 3 id., 430, 437, 438.) The
order confirming the commissioners' report is conclusive only
upon the regularity of the proceedings, and not as to their
effect in transferring a title. (*Embury* v. *Conner*, 3 N. Y.,
511.) The commissioners were not authorized to deduct the
the value of the buildings and compensate for land only.
(*In re Wall St.*, 17 Barb., 617; *Bennett* v. *Doyle*, 40 id., 551.)

*Jno. E. Parsons* for the respondent. Under the law of eminent domain the State can only take what it is indispensably necessary to take for public use. . (Const. State N. Y., art. 1, §§ 6, 7; *Embury* v. *Conner*, 3 Comst., 511; *Strang* v. *The N. Y. Rubber Co.*, 1 Sweeny, 78; *Bennett* v. *Boyle*, 40 Barb., 551.) The commissioners' report having been confirmed, became final and conclusive. (Act April 9, 1813, chap. 86, § 178.) As the materials of the buildings were not required in order to execute the trust conferred by the statute, no title to them was ever vested in the city. (Davies' Laws, 534; Fletcher on Estates of Trustees, 48, 49, 51; *Trent* v. *Hanning*, 7 East, 97; 5 Taunt., 383; *Doe* v. *Simpson*, 5 East, 172; *Goodlittle* v. *Witty*, 1 Bun., 229; Lewin on Trusts, 234.)

ANDREWS, J. The act of 1813 "to reduce several laws relating to the city of New York into one act" authorizes the mayor, aldermen and commonalty of the city to acquire by voluntary cession from the owners, or by compulsory proceedings, the fee of lands required for laying out, opening or widening streets in the city. The one hundred and seventy-eighth section declares that it shall be lawful for the mayor, aldermen and commonalty to agree with the owners, lessees, parties or persons interested, for and about the cession of lands required for that purpose, and the compensation and recompense to be made therefor. By the same section the proceedings to be taken for the condemnation of lands required for street purposes and for ascertaining the compensation to be awarded for the property taken are prescribed. Commissioners of estimate and assessment are to be appointed by the court upon the application of the city, who are to make a just and equitable assessment of the damages to the owners or persons interested in the lands taken in consequence of the improvement, and the taking of the lands therefor. When the loss or damage by reason of taking the lands for the street exceeds, in the opinion of the commissioners, the value of the benefit to the owner of the improvement, they are required to estimate and report the excess of the loss or

damage over the benefit, which sum the statute declares shall
be the compensation and recompense to be made to the owner
for his loss and damage " in consequence of the said improve-
ment, and relinquishing the said lands, tenements, heredita-
ments and premises so required of him for that purpose."
Upon the coming in of the report of the commissioners
the court, after hearing any matter which may be alleged
against the same, may confirm it or refer it for revisal or cor-
rection to the same or new commissioners; and the report,
when confirmed, is made final and conclusive upon the city and
upon the owners and all persons interested in the lands taken;
and the statute declares that on confirmation of the report
" the said mayor, aldermen and commonalty of the city of
New York shall become and be seized in fee of all the lands,
tenements, hereditaments and premises in the said report
mentioned " required for the street, and authorizes the city
to take immediate possession thereof.  The statute directs
that in making the assessment for the opening of streets
laid out and mapped under the act of April 3, 1807, the com-
missioners shall not allow compensation for buildings erected
on the streets laid out under that act after the filing of
the maps showing the location of the proposed streets; but
it authorizes the corporation to permit such buildings to
remain unremoved for such time as they shall think proper.
It expressly declares that compensation shall be made for
buildings erected on such streets before the filing of the maps;
and authorizes the commissioners, when it becomes necessary,
in laying out, enlarging or improving streets in any part of
the city not laid out into streets under the act of 1807, to
remove any building, to assess, if they deem it equitable to
do so, any part not exceeding one-third of the value thereof
upon the city.

The lands required for the extension of Church street were
in a part of the city not laid out into streets under the act of
1807, and a brick building had been erected and stood upon
the land of the defendant, taken for the extension, at the time
the proceedings were commenced.  The building was part

and parcel of the freehold. Structures affixed to the land by the owner are in contemplation of law a part of it, and pass by a conveyance of the land, if there is nothing to indicate a contrary intention, and are subject to the rules and incidents of real property. It is plain that the authority conferred by the act of 1813 upon the corporation to take lands for streets (not laid out under the act of 1807) by coercive proceedings against the owner, contemplates the acquisition by the city of the entire interest and title of the owner in the lands taken ; and that compensation shall be made as well for buildings erected upon the land as for the soil. Whatever is land within the general and legal meaning of the term, is to be estimated in ascertaining the compensation. If the legislature could have authorized the taking of the soil only, leaving the buildings to the owner, with the right to remove them upon making compensation for the value of the land, exclusive of the buildings, or of the materials composing them, it has not exercised this power by the statute of 1813. It was the duty of the commissioners of estimate and assessment, under the statute, to estimate and report the value of the plaintiff's land, taken for the street, including the building thereon. They had no right, without her consent, to restrict the assessment to the value of the land, exclusive of the building, leaving to her the right to remove it. The statute did not authorize such a severance of her interest, nor did it design to compel the owner, whose lands might be required for public use, to retain, as chattels, the fixtures on the premises, and exempt the city from the obligation to take and pay for them as part of the land. The report of the commissioners of estimate and assessment, after reciting that the lot of the plaintiff was required for the extension of Church street, declares that they had estimated the loss and damage of the plaintiff in consequence of the extension, and of the owner " relinquishing the land, with the improvements thereon, for that purpose, and removing the same therefrom, and of the taking of said land for the purposes aforesaid, to amount to the sum of twenty-

nine thousand and forty dollars; and that any buildings now situated on said land would be required to be removed therefrom." The construction of the report is not free from difficulty, but, upon careful consideration of the language used, we are of opinion that the intention was to award to the defendant compensation for the land taken, considered in connection with the right reserved to the owner to remove the building from the premises. That the commissioners intended, by the report, to reserve to the plaintiff the ownership of the building, and the right to remove it, is the only view consistent with the fact that any reference was made to it. If the intention was to vest in the city the title to the building, the reference to its removal contained in the report was unnecessary and inappropriate. Nor does the statement in the report, that the damages are estimated for the plaintiff's relinquishing the land and the *improvements*, conflict with this view. The value of the soil, and of the materials of the building detached therefrom, would not or might not represent the whole value of the property. Buildings erected upon land are generally of more value than the materials of which they are constructed. It is in this view we think that the language of the report is to be construed. The damages were estimated for relinquishing the land and also the improvements *as such* in their relation to and connection with the land, but reserving to the owner the right to remove the building. The report was confirmed by the court without objection by the plaintiff, and the question arises whether the city is liable to the plaintiff for the subsequent conversion of the materials of the building to its use. If the departure by the commissioners from the rule of assessment prescribed by the statute was a jurisdictional defect in the proceedings, and the plaintiff has not been divested of her title to the land, and is not precluded from asserting it, her right to recover is plain. If the title passed to the city by force of the statute and the proceedings under it, then it would be plainly inequitable to allow the corporation to appropriate the building without making compensation. The rule of the common law, that

whatever is annexed to the freehold becomes a part of it, may be controlled and modified by agreement between the owner and the person by whom the annexation is made. The law has engrafted a qualification upon the rule in case of erections made upon the land by a tenant for purposes of trade, and gives him in general a right to remove them during his term. So, also, the owner may reserve from a conveyance of the land the trees or buildings thereon, in which case they will in contemplation of law be regarded as divided and severed from the soil, and will vest as chattels in the grantor, even before actual severance. (4 Co., 636; Hob. 168; Williams on Exrs., 594; *Sanborn* v. *Hoyt*, 24 Me., 118; *Kingsley* v. *Holbrook*, 45 N. Y., 313.) And trover will lie for them, at least after actual severance from the freehold. (Addison on Torts, 312; *Colegrave* v. *Dias Santos*, 2 B. & C., 78; *Benson* v. *Smith*, 1 Hill, 176; *Russell* v. *Richards*, 11 Me., 371.) It is clear that the city, under the authority given by the act of 1813, to acquire by voluntary agreement with the owner the title to lands required for streets, could have agreed with the plaintiff for a conveyance of her land, reserving to her the building and the right to remove it. Such an arrangement might be beneficial to both parties, and would not interfere with the public use to which the land was to be devoted. The commissioners, in their report, in awarding compensation to the plaintiff, treated the building as severed from the land. The plaintiff could have objected on the coming in of the report to the rule adopted by the commissioners in estimating her damages. She was not bound to take the building. But she acquiesced in the report by not objecting to it. The objection which she might have made was to the rule of assessment. She could, however, waive it and assent to retain the building as a chattel interest. Her assent appears not only by the omission to object on the confirmation of the report, but by the fact that the report was in this respect in conformity with an understanding between the plaintiff and the commissioners. (*Embury* v. *Connor*, 3 N. Y., 511; *Baker* v. *Braman*, 6 Hill, 47.)

Neither party having objected to the confirmation of the report, it became by the terms of the statute final and conclusive upon them. The city acquired the fee of the land, subject to the right of the plaintiff to the building, and having, as the demurrer admits, converted the materials to its use, we are of opinion that the action can be maintained.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.