(39 App. Div. 589.)

In re MAYOR, ETC., OF CITY OF NEW YORK.

In re CONSOLIDATED GAS CO.

(Supreme Court, Appellate Division, First Department. April 21, 1899.)

**1. EMINENT DOMAIN—CONDEMNATION—GOING PLANTS.**
Though a gas plant had not been used for several years, the machinery had been kept in condition for use, and the company that owned it in connection with other plants kept it as a reserve plant for use in case of the failure of any other one. *Held*, that in condemnation proceedings the commissioners were justified in treating it as a going plant.

**2. SAME—APPRAISEMENT—FIXTURES.**
When a city condemns land for a public purpose, the same rule applies as to fixtures as between a vendor and vendee. The buildings and machinery which are so attached to the land as to be fixtures must be taken and paid for.

On the application of the mayor, aldermen, and commonalty of the city of New York to acquire title to land in the Twelfth ward for a public park. Motion of the Consolidated Gas Company of New York to confirm the report of the commissioners of estimate sustained.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and O'BRIEN, JJ.

Michael J. Mulqueen, for the motion.
William M. Ivins, for the mayor, opposed.

RUMSEY, J. This is a motion to confirm the report of commissioners who were appointed to appraise the value of lands to be taken for a park in the Twelfth ward of the city of New York pursuant to the provisions of chapter 746 of the Laws of 1894. The questions presented upon the motion arise solely out of the award to the Consolidated Gas Company of New York for its lands which are included within the area of the park. The questions are presented upon the objection of the city to the principle of the appraisal and to its amount; the corporation counsel insisting that the commissioners have erred in several particulars, which are spoken of in this opinion. The land of the Consolidated Gas Company within the area of the park and to be taken by the city is situated between 111th and 112th streets, and is bounded by 1st avenue on the west, and includes about half of a block. It is a portion of a plot of land formerly owned by the Harlem Gaslight Company, and upon which stands the plant used by that company before 1884 for the manufacture of gas for distribution in the upper part of the city of New York. The plant extends over four plots of land. That not taken is situated south of 111th street. A large proportion of the machinery used in the manufacture of gas is upon this southern portion of the land, and the remainder of it is situated upon that part proposed to be taken by the city. The machinery upon the two pieces of land constitutes the plant for the manufacture of gas, and all of it is necessary for that purpose, and was employed by the Harlem Gaslight Company. Before 1884, and while this property was in the possession of the Harlem Gaslight Company, the plant had been considerably extended

to enable that company to increase the quantity of gas which it manufactured. In the year 1884 the several corporations engaged in the manufacture and distribution of gas in the city of New York were organized into one great corporation, which is known as the Consolidated Gas Company of the City of New York, and that company took possession of the plants of the several different corporations, and made arrangements to manufacture and supply gas for all that portion of the city which had formerly been served by them. Some of the companies joining in the consolidation had manufactured coal gas and others water gas. The latter was much cheaper. The policy of the Consolidated Gas Company was, so far as can be gathered from the evidence, to make and distribute water gas so far as practicable, and to use the plants which had been erected for the manufacture of coal gas only so far as might be necessary to supplement the deficiencies of the water-gas plants. The plant of the Harlem Gaslight Company was adapted for the making of coal gas, and during several years after the consolidation it was used exclusively for that purpose, and gas was manufactured in it continuously. It is fair to infer from the testimony that at a certain time after the consolidation an effort was made to convert the coal-gas plant into a water-gas plant, but that effort seems to have been a failure. No gas was manufactured at this plant after 1892. The evidence, however, tends to show that the machinery upon the premises was kept in such condition that it would be practicable at any moment to make gas if it were necessary to do so. It is claimed by the city that since 1892 the plant has been wholly disused, and that the Consolidated Gas Company had not only ceased to manufacture gas with this plant, but that it had been entirely abandoned, and was of very little use for the purposes for which it was originally intended. The Consolidated Gas Company, the claimant here, on the contrary, insists that, although gas had not been made with that plant since 1892, the machinery had been kept in condition for use, and the plant was kept as a reserve plant, so that, if necessary, it could be used for the purposes for which it was originally erected. It is stated by the claimant that the amount of gas required for its purposes is very great; that it is necessary that its machinery and plant should be kept in a condition to enable it to supply that quantity of gas at any time; and that, in view of the possibility of the failure of some one of its plants in use, thereby rendering it unable to manufacture the necessary quantity of gas, it is compelled to keep this plant ready for use as a reserve plant in case of the failure of any other one. It was claimed by the company that, in view of this condition of affairs, they were entitled to have the value of the property taken, and its damages estimated, upon the theory that it was to be used for the purposes for which it was kept. The commissioners evidently adopted the theory of the claimant, and whether they were right in so doing, and, if they were, whether they adopted a correct principle in appraising the damage suffered by the Consolidated Gas Company because of the taking of a portion of this plant, is the question presented upon this motion. A careful read-

ing of the testimony satisfies us that the evidence was sufficient to justify the commissioners that this was a going plant. To be sure, it had not been used for several years before the taking of the testimony, but the evidence warranted a conclusion that it had been kept in a condition to be used, if necessary, and that the business of the claimant was such that prudence required the maintenance of a reserve plant to enable it to supplement any unlooked-for failure of any other of the various establishments existing throughout the city for the manufacture of gas. So far, therefore, as the action of the commissioners in regarding this as a going plant was concerned, we are satisfied with their conclusion.

The remaining question is whether the commissioners adopted a proper principle in estimating the damage suffered by the claimant because of the taking of that portion of its land which was included within the park area. If the proper principle was adopted by the commissioners in fixing the damages, the report should be confirmed, unless it shall appear that a grave injustice has been done in its application. In re Opening Boston Road, 27 Hun, 409. Where the land taken is a portion of a greater tract, which is used for one purpose, and the part taken and the buildings upon it are necessary for the purposes to which the whole tract has been devoted, the owner is entitled not only to the value of the land actually taken, but to the difference between the value of the plant as it was before the land was taken and the value as it is after the taking. 10 Am. & Eng. Enc. Law (2d Ed.) 1164; Mills, Em. Dom. §§ 162, 163. This rule of law is not disputed in this case, and the authorities in the books cited amply sustain it. The commissioners have evidently applied this rule in reaching the conclusions which they have given in their report. They have given the value of the land taken at $275,000, and they have stated that the taking of that land will necessarily injure and damage the whole plant to the amount of $90,000 in addition. This conclusion is a substantial application of the rule above stated, and the question upon this branch of the case is simply whether the commissioners, in reaching this conclusion, have so far disregarded the evidence that we can say that they have done injustice to the city by giving to the claimant considerably more than it was entitled to have. It cannot be disputed that the award of damages is considerably less than the amount estimated as proper by the witnesses sworn on the part of the Consolidated Gas Company, and it is considerably greater than the amount stated by the expert witnesses sworn for the city. The witnesses for the claimant estimated the value of the property within the area taken, including the buildings and the machinery, at something over $327,000. The value of the same property as estimated by the city's experts is about $220,000. The appraisal of the commissioners for the property taken was $275,-000. It appears that the commissioners not only heard the testimony of the expert witnesses, but that they made a personal examination of the property. What was taken included not only the land, but the buildings, and the machinery in the buildings, which it was claimed by the gas company were fixtures, and necessarily

went with the land. It is claimed by the city that a large portion of the machinery in the buildings, although affixed to the realty in such a way that, as between buyer and seller, it would undoubtedly pass as a fixture, could be removed without injury to itself, and for that reason it is not to be regarded as a fixture in cases of this kind, and that its value should be deducted from the value of the property taken. The argument of the city is, substantially, that the city takes simply the land, and that whatever is put upon the land for purposes of trade or business, although put there by the owner, and not by a tenant, is not to be regarded as a portion of the land to be taken, if it can be removed without such injury to the machinery itself as will practically result in its destruction for the use for which it was intended. It is said by the city that the evidence shows that, after taking the land within the park area, sufficient space is still left upon the remaining land to place the machinery which was upon the land taken, and make a complete and convenient gas plant upon the land, title to which still remains in the company, and is not taken by the city. It is claimed that the measure of damages, under those circumstances, is the value of the land taken and the expense of the re-erection of the gas plant upon the land remaining to the company, and that expense is to be the actual injury sustained by the removal of the machinery upon the land taken to its new location, and its erection in that place. It is claimed that this injury includes the cost of removing the machinery and of putting it in as good a condition as it was in the place where it stood at the time that the city took it. It will be noticed that this contention involves the proposition that, although the machinery, as it stands upon the land, would be a fixture as between vendor and vendee, yet that the doctrine of fixtures as it exists in that relation does not apply here, but that it is the duty of the owner to remove all of this machinery which can be removed without its practical destruction, and that that machinery is not to go to the city. The question, therefore, is whether the law of fixtures as it is applied in the ordinary transfers of real estate is to control the commissioners in the appraisal of these damages, and, if it is, whether the machinery upon these premises was a fixture within the rule so applied.

There is practically no dispute upon the evidence that, as between vendor and vendee, a very large portion of this machinery would have been regarded as a fixture, and therefore, if the premises had been sold by contract between two individuals, the machinery would go with the land. Does this law of fixtures apply to this class of cases? In answering that question it is to be remembered that by the original rule of common law everything which was affixed to the freehold was considered to be a part of it. 2 Kent, Comm. 343. The law of fixtures was evolved out of a desire on the part of the courts to protect those who, having an estate less than a fee in the land, had made improvements upon it, which, if they could not retain, would be lost to them; and in the effort to protect the interests of those persons there has grown up gradually a rule in derogation of the common law by which per-

sons who put upon the land improvements would be permitted to retain them, unless they were so placed as that their removal would injure a portion of that which necessarily belonged to the freehold. But where the improvements were put upon the land by the owner, and it was evident that they were so placed there to enable him to better use his own land for the purposes for which he intended it, there could have been on his part no intention to remove these improvements, and justice did not require that the common-law rule should be limited for his protection. For that reason it has always been held that, so far as the owner is concerned, the law of fixtures would be rigorously limited, and that whatever had been put upon the premises under such circumstances that it would become a part of the freehold, or essential for the purposes for which the freehold was used, would be, so far as the owner was concerned, regarded as a fixture as between him and any person to whom he proposed to transfer the land. The same rule exists in proceedings to take land under the right of eminent domain, and the commissioners of estimate have no right to restrict the assessment to the simple value of the land, compelling the owner to retain the fixtures on the premises, and exempting the city from an obligation to take and pay for them as a part of the land. Schuchardt v. Mayor, etc., 53 N. Y. 202, 208. Whatever has been put upon the land by the owner with the intention that it should remain upon the land, and was essential to the use which he made of it, is, generally speaking, as between himself and his vendee, a fixture, and goes with the land when he shall sell it. For instance, a building which he erects, although it may have been put upon the land in such a way that a tenant might remove it during his term, yet as between vendor and vendee it shall be regarded as a fixture, and shall pass upon a sale of the land. 1 Washb. Real Prop. (3d Ed.) p. 5. So machinery which has been put in the building, and is permanent in its character, and essential for the purposes for which the building is occupied, is to be regarded as realty. O'Brien v. Kusterer, 27 Mich. 290, note. When the value of the land is appraised, such appraisal must include whatever is a fixture, and the claimant must be paid for it. Lewis, Em. Dom. § 488. This was evidently the rule adopted by the commissioners. In their valuation of the land taken they award to the gas company $275,000 for the land, buildings, improvements, and fixtures. In ascertaining that sum they evidently have estimated as a portion of the land the machinery which was permanently annexed to the freehold, and which, as between vendor and vendee, would pass as a fixture if the land had been sold by a contract of purchase. We think that this estimate was proper, and that the rule adopted by the commissioners is the rule established by the courts. In re Appointment of Park Com'rs (Super. Buff.) 1 N. Y. Supp. 763. When the city shall take possession of this property there will be presented the question what portion of this machinery passes under this award, but it seems to us that this will not be difficult to ascertain. No personal property is claimed. The city has no authority to take it or pay for it. In re

Public Parks, 53 Hun, 280, 298, 6 N. Y. Supp. 750. All that is claimed, all that is taken, and all that is paid for is the land, buildings, and fixtures. This the city, having paid for, is entitled to keep. Whatever is not a fixture the gas company is entitled to remove. When possession is taken of the property, if any dispute shall arise, it is to be settled upon the application of the principles of law of fixtures which obtain between vendor and vendee, and everything which, as against a vendor, would be a fixture when it sold the property, is to be regarded as a fixture when the city takes possession of this property, and it goes to the city by this award. The rule is so well settled in theory that it will not be necessary to send the award back to the commissioners to specify what they intended should pass under the term "fixtures"; but, if a dispute should arise upon that question, it is to be determined by well-settled rules, as stated above.

In addition to the value of the property actually taken the claimant is entitled to have such a sum as would repay it for the depreciation of that portion of the plant which it still retains. That sum has been estimated by the commissioners at $90,000. The commissioners were not at liberty to consider the cost of buying new machinery to replace that which was taken by the city, because the machinery which was taken by the city, and which is regarded as a fixture, is to be paid by the city when it took it; and if there was allowed to the claimant, in addition to the price of the machinery, the expense of new machinery, the claimant would be receiving pay twice for that much of the property which was taken. If it was practicable to rebuild the plant upon the land still owned by the gas company, the expense of refitting it should have been allowed to the company, not including, however, the expense of buying machinery in the place of that which was upon the land taken, and which passed to the city. In addition to that, if the new plant should be less convenient for use than the old one, and for that reason of less value, the claimant should have been allowed the difference in the value of the new plant when it was finished as compared with the old, and more convenient, plant as it stood before the taking. If the land remaining in the company was not sufficient to erect the new plant, so that new land must be acquired, or the old plant would be practically useless, the diminution in value of the old plant, or the expense of procuring a new place upon which to erect the plant, must be taken into consideration. It was claimed by the city that the land remaining in the ownership of the gas company contained ample room for the erection of a new plant, and that the expense of that erection would be comparatively small. It was claimed on the contrary by the gas company that the land was not large enough for the new plant to be as commodious and convenient as the old plant was, but that the expense of refitting the old one would be quite large, and that when it was finally refitted it would be less convenient because of the contracted space in which the buildings would have to set, and for that reason less valuable than it was before, and for this damage they claimed that they were entitled to be paid. The

commissioners seem to have adopted the contention of the claim-ant, and we cannot say that they were not correct in their con-clusion, although the amount of the award of damages to the re-maining portion of the plant by reason of the taking of that with-in the park area seems to be quite large. Still it is considerably. within the estimate given by the witnesses for the claimant, and. the commissioners were clearly at liberty to disregard the theory. of the city and their plans as to the manner of building the new plant, and their judgment in that regard cannot be reversed by us. upon the evidence as it appears.

For these reasons we are of the opinion that the objections to the award are not well taken, and that the report must be con-firmed. All concur.