In re WATER FRONT ON NORTH RIVER IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   April 10, 1908.)

1. EMINENT DOMAIN—LEASE—SURRENDER OF LEASE—DAMAGE TO FIXTURE.

Where claimant railroad company surrendered to the lessor a leasehold estate on which it had constructed certain fixtures, both removable and permanent, on the property being condemned for public use, it parted, by such surrender, with every claim of damage, not only to the leasehold estate, but to everything appurtenant thereto, notwithstanding an attempted reservation in the instrument of surrender, and could not therefore claim damages for the diminution in value of its fixtures under the rule that, where land taken is a portion of a greater tract used for one purpose, and the part taken and the buildings on it are necessary for the purpose to which the whole tract has been devoted, the owner is entitled, not only to the value of the land actually taken, but the difference between the value of the plant as it was before the land was taken and its value after the taking.

2. SAME—RIGHT TO FIXTURES—USABLE VALUE.

The permanent fixtures on surrender of the lease reverted to the landlord, so that whatever loss accrued in respect to them resulted from the surrender of the lease, and not from the condemnation, and, as to the fixtures which remained personal property, their usability for railroad purposes terminated when the lease was surrendered as a consequence thereof, and not by virtue of the condemnation proceedings.

3. SAME—LICENSES—REVOCATION—EFFECT.

Where a railroad company constructed a portion of its ferry house upon and in front of a bulkhead which it held under a license from a city, subject to revocation on three months' notice, and such license was revoked pursuant to the city's plan for the improvement of the water front, the railroad company was not entitled to claim damages for the loss of the use of the portion of the ferry house which was erected on and in front of the bulkhead.

Appeal from Special Term.

Application by the city of New York for the acquisition of land, etc., on and near the North river, between West Eighteenth and West Twenty-Third streets, in such city, for the improvement of the water front. From an order of the Special Term confirming a report of commissioners denying a claim for damages, filed by the Erie Railroad Company, it appeals.   Affirmed.

See 118 App. Div. 865, 105 N. Y. Supp. 750.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

F. B. Jennings, for appellant.
Theodore Connoly, for respondent.

SCOTT, J.   The Erie Railroad Company appeals from an order confirming the report of commissioners of estimate appointed in proceedings to condemn certain lands and premises, including bulkhead rights on the North river; the particular property sought to be acquired and involved in this appeal being the rights of wharfage attached to the bulkhead line of the Hudson or North river between the northerly side of Twenty-Second street and the southerly side of Twenty-Third street in the city of New York.   The purpose of the acquisition of the property is to enable the city to carry out the familiar plan

of water front improvements of 1871, as amended. No property whatever of the appellant is taken; its claim being solely for consequential damages to certain fixtures attached to land formerly leased by it. Prior to and at the time of the commencement of these proceedings the appellant held the bulkhead under a lease from the owners thereof. It also held under lease from the same owners the block of land between Twenty-Second and Twenty-Third streets opposite the bulkhead and separated therefrom by Thirteenth avenue. Upon this block it had erected a freightyard containing seven tracks, connected by switches, with driveways between the tracks, platforms, and other appurtenances; the whole being surrounded by a fence. Opposite the bulkhead on the river side thereof, it maintained, under a revocable permit from the city, a platform or bridge attached to the bulkhead, and a float or scow intended for the reception of freight cars brought there by car floats. Tracks in Thirteenth avenue, also maintained under a revocable permit, connected the platforms and scow with the freightyard. The result of the acquisition of the bulkhead by the city, and the consequent improvement of the water front, was to prevent the use of the platforms and scow for landing cars, and consequently to render useless the car tracks in Thirteenth avenue and the freightyard on the block between Twenty-Second and Twenty-Third streets. This undoubtedly greatly affected the value of appellant's leases, but no claim for damage in that regard is made, because the appellant surrendered its leases to the lessors as of October 17, 1902, the date on which title to the property vested in the city. In the instrument of surrender it tried to reserve to itself some claim for damages by the following language:

"It is expressly understood that this surrender and assignment shall not. and does not, include or affect any claims against the city for damages sustained by the company because of the portion of said premises (other than the bulkhead) and the company's fixtures being rendered unfit for the purpose of the company by reason of the condemnation of the said bulkhead by the city, which said claim or claims so excepted are hereby expressly reserved to the company."

Under this attempted reservation the appellant now asserts a claim for damages which is thus formulated in its brief on this appeal:

"It claims that, by the taking of these bulkhead rights, its fixtures attached to the bulkhead itself and to the adjoining block of ground and used by it in common with the bulkhead as one tract or parcel of land had been greatly diminished in value, and in fact rendered practically worthless, and that it was entitled to an award for such diminution in value."

· It must be conceded that the appellant did use the bulkhead and the freightyard as one plant, neither portion of which would have been of substantial value without the other, and this interdependence of each part upon the other was not affected by the circumstance that the two parcels were separated by Thirteenth avenue, so long as the city's permit to maintain connecting tracks in that avenue remained unrevoked, as it did up to the time that the city acquired title to the bulkhead. If, therefore, the appellant had owned both the bulkhead and the freightyard, or had continued to hold them both as lessee, a strong case would have been presented for the application of the well-settled rule that

where the land taken is a portion of a greater tract which is used for one purpose, and the part taken and the buildings upon it are necessary for the purpose to which the whole tract has been devoted, the owner is entitled, not only to the value of the land actually taken, but to the difference between the value of the plant as it was before the land was taken and its value after the taking. Matter of the Mayor, etc., 39 App. Div. 589–592, 57 N. Y. Supp. 657. That rule is not, however, applicable here, because the appellant stands in the position neither of owner nor lessee, and concededly has no claim for damages for the property actually taken. By the surrender of its leasehold estate it necessarily parted with every claim of damage not only to the leasehold estate itself, but to everything appurtenant to that estate, notwithstanding any attempted reservation. McKenna v. Brooklyn Union El. R. R. Co., 184 N. Y. 391, 77 N. E. 615. It had expended considerable money in improving the property and adapting it to its own purposes. Of these improvements a considerable proportion were in the nature of permanent fixtures irremovable by the tenant at the expiration of his lease. These reverted to the landlord upon the surrender of the lease, and whatever loss accrued in respect to them resulted from the surrender, and not from the condemnation. So far as the fixtures remained personal property, their usability for railroad purposes terminated when the leases were surrendered, and also in consequence thereof. The real damage suffered by the appellant, and it was doubtless serious, lay in the destruction of the value of its leasehold estate, to which the loss of usability of its fixtures was incident and appurtenant. It retained its property rights in the fixtures, so far as they were removable, but it could no longer use them as a means of extracting the full value from its leasehold estate. This was a part of the damage to that estate, and not to the fixtures considered separate and apart from the estate itself. The right to an award for this damage was surrendered with the surrender of the leases.

The appellant also claims to be entitled to damages for the loss of the use of a portion of its ferry house which was erected upon and in front of the northerly part of the bulkhead. The appellant held under lease from the city the franchise to operate a ferry at the foot of Twenty-Third street, and of the wharf and bulkhead privileges necessary for the operation of the ferry. The lease contained conditions under which it might be terminated at any time upon three months' notice from the city in case the property or any part of it was required for the improvement of the water front, and in case of such termination the appellant expressly agreed that it would not make any claim for damage by reason of the surrender and vacation of the premises, or for or on account of any structures or improvements which might have been erected or constructed upon the demised premises. Such a notice was given to appellant, and it makes no claim for the loss occasioned by so much of its ferry structure as lies within the north and south lines of Twenty-Third street. It had, however, extended its ferry house south of Twenty-Third street, so that a portion of it lay upon and in front of the bulkhead which it held under lease, and, although it has surrendered its lease of the bulkhead, it now claims damages for deprivation of the use of so much of the ferry structure as

lay on and in front of the bulkhead. Assuming that this portion of the structure was legal and erected pursuant to a competent license, the structures must have been only temporary in their character, and the authority to erect and maintain them terminated ipso facto when the city required the bulkhead for the extension of the plan of 1871. When the city acted, the result was to revoke appellant's license, right, or authority to maintain the ferry structure on and in front of the bulkhead, and for such revocation no·claim for damages can arise. Kingsland v. Mayor, etc., 110 N. Y. 569, 18 N. E. 435.

The appellant's claim for damages was rightly disallowed, and the order confirming the report of the commissioners must be affirmed, with costs. All concur.