## In re J. L. KESNER CO.

(Circuit Court of Appeals, Second Circuit. December 22, 1914.)

### No. 64.

BANKRUPTCY ☞139—TRADE FIXTURES—JUDGMENT LIEN—"REAL PROPERTY"
—CHATTELS REAL.

Code Civ. Proc. N. Y. § 1430, provides that the expression "real property" includes leaseholds where the lessee is possessed at the time of sale of at least five years unexpired term, etc., and section 1251 declares that, except as otherwise prescribed, a judgment binds, for 10 years after filing the judgment roll, the real property and chattels real, in the county in which it is docketed, which the judgment debtor has at the time of so docketing or which he may thereafter acquire. *Held,* that where, at the date of the bankruptcy, the bankrupt was occupying certain real property under leases each of which had more than 10 years to run, trade fixtures affixed to the floors by nails, bolts, screws, etc., and intended to be used as long as the business continued or until they wore out and were replaced, were chattels real as between the bankrupt and its creditors, and were therefore subject to the lien of judgments recovered against it more than four months before bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 198, 199, 210-219; Dec. Dig. ☞139.

For other definitions, see Words and Phrases, First and Second Series, Real Property.]

Lacombe, Circuit Judge, dissenting.

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

R. P. Levis, of New York City, for appellant.
J. M. Lesser, of New York City, for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an appeal from and a petition to revise an order of the District Court confirming the report of the referee holding certain judgment creditors of the bankrupt entitled to a lien upon the proceeds of sale of fixtures belonging to the bankrupt and directing the judgments to be paid therefrom.

The bankrupts carried on a department store in buildings covering the entire front on the west side of Sixth avenue between Twenty-Second and Twenty-Third streets, with the exception of the Twenty-

Third street corner. They occupied under 12 separate leases, each of which had more than 10 years to run at the date of adjudication. In each department they had installed at their own expense fixtures appropriate to the business therein conducted which were affixed to the floors and walls by nails, bolts, screws, etc., and were intended to be used as long as the business continued or until they wore out and were replaced.

More than four months before the petition in bankruptcy was filed judgments were recovered against Kesner & Co. by Andrew F. Jessen as administrator and by Charles M. Lamb & Co., upon which no executions were ever issued because before stay of execution had expired receivers were appointed of Kesner & Co., in an equity suit in the District Court which was subsequently displaced by these proceedings in bankruptcy.

The question to be determined is whether the fixtures are realty, being a part of the leasehold estate, as the judgment creditors contend, or personal property, as the trustee contends.

The leaseholds were chattels real by virtue of section 1430 of chapter 13, tit. 2, art. 3, Code of Civil Procedure, entitled "Sale, redemption and conveyance of real property; rights and liabilities of persons interested"—which reads:

"Sec. 1430. To what leasehold property this article applies. The expression 'real property,' as used in this and the succeeding article, includes leasehold property, where the lessee or his assignee is possessed, at the time of the sale, of at least five years unexpired term of the lease, and also of the building or buildings, if any, erected thereupon."

We do not overlook the fact that under the Decedent Estate Law leases for years are personal property. Despard v. Churchill, 53 N. Y. 192.

And the leaseholds were subject to the lien of the judgments by virtue of section 1251 of chapter 11, tit. 1, of article 3 of the Code entitled "Docketing a judgment; effects thereof, as a lien upon real property; suspending and discharging the lien; satisfaction and assignment of a judgment"—the material part of which reads:

"Sec. 1251. Except as otherwise specially prescribed by law, and except also as in this section below provided, a judgment, hereafter rendered, which is docketed in a county clerk's office, as prescribed in this article, binds, and is a charge upon, for ten years after filing the judgment roll, and no longer, the real property and chattels real, in that county, which the judgment debtor has at the time of so docketing it, or which he acquires at any time afterwards, and within the ten years."

It follows that, if the fixtures were a part of the leasehold estate, the judgments were liens upon them and are to be paid out of the proceeds of sale which have been kept as a separate fund in the hands of the trustee to await the determination of the court.

There can be no question that between Kesner & Co., and their landlords, in the absence of any agreement to the contrary, of which there is no evidence, these are trade fixtures removable as personalty by Kesner & Co. The rule, however, between landlord and tenant is an exception. Between grantor and grantee, mortgagor and mortgagee, and in condemnation proceedings the general rule applies that

219 F.—33

annexations to the freehold are a part of the freehold. The question to be decided is whether, as between Kesner & Co. and their judgment creditors, these fixtures were a part of the leasehold or removable as personalty.

When the owner of land who has annexed fixtures to it, either sells or mortgages the land, the fixtures go with it, though not mentioned (Walker v. Sherman, 20 Wend. [N. Y.] 636, 655; Day v. Perkins, 2 Sandf. Ch. [N. Y.] 359); and in condemnation proceedings the rule is the same (Matter of the Mayor, 39 App. Div. 589, 595, 57 N. Y. Supp. 657; 19 Cyc. 1059). Cowen, J., in Walker v. Sherman, said, at page 655 of 20 Wend.:

"On the whole, I collect from the cases cited, and others, that, as a general rule, in order to come within the operation of a deed conveying the freehold, whether by metes and bounds of a plantation, farm, or lot, etc., or in terms denoting a mill or factory, etc., nothing of a nature personal in itself will pass, unless it be brought within the denomination of a fixture by being in some way permanently, at least habitually, attached to the land or some building upon it. It need not be constantly fastened. It need not be so fixed that detaching will disturb the earth or rend any part of the building. I am not prepared to deny that a machine movable in itself would become a fixture from being connected in its operations by bands, or in any other way, with the permanent machinery, though it might be detached, and restored to its ordinary place, as easily as the chain in Farrar v. Stackpole [6 Greenl. (Me.) 154, 19 Am. Dec. 201]. I think it would be a fixture notwithstanding."

In Matter of The Mayor, Rumsey, J., said:

"But where the improvements were put upon the land by the owner, and it was evident that they were so placed there to enable him to better use his own land for the purposes for which he intended it, there could have been on his part no intention to remove these improvements, and justice did not require that the common-law rule should be limited for his protection. For that reason it has always been held that, so far as the owner is concerned, the law of fixtures would be rigorously limited, and that whatever had been put upon the premises under such circumstances that it would become a part of the freehold, or essential for the purposes for which the freehold was used, would be, so far as the owner was concerned, regarded as a fixture as between him and any person to whom he proposed to transfer the land.

"The same rule exists in proceedings to take land under the right of eminent domain, and the commissioners of estimate have no right to restrict the assessment to the simple value of the land, compelling the owner to retain the fixtures on the premises, and exempting the city from an obligation to take and pay for them as a part of the land. Schuchardt v. Mayor, 53 N. Y. 202, 208. Whatever has been put upon the land by the owner with the intention that it should remain upon the land and was essential to the use which he made of it is, generally speaking, as between himself and his vendee, a fixture, and goes with the land when he shall sell it."

A sale upon execution carries them exactly as a conveyance does, there being no difference in this regard between a voluntary sale by the grantor and a forced sale by the sheriff. Farrar v. Chauffetete, 5 Denio (N. Y.) 527, 529. Mr. Ewell in his work on Fixtures says (page 275):

"The general rule undoubtedly is that all fixtures, whether actually or constructively annexed to the realty, pass by a conveyance or mortgage of the freehold, where there is nothing to indicate a contrary intention. And it makes no difference that the conveyance is by virtue of legal process as by

sale of land on execution, the rule in such a case being the same as in the case of a private sale. The rule is the same in the case of a conveyance or mortgage of a leasehold without mentioning the fixtures, which, though removable, as against the landlord, pass, unless a contrary intention appears."

When a lessee assigns or mortgages a leasehold, we think the same rule as to fixtures applies as in the case of the conveyance or mortgage of the freehold. On this subject Mr. Ewell says (page 278):

"In like manner, tenant's fixtures, though removable by the tenant as against the landlord, at the end of the term, pass as a part of the security by the deposit of a lease by way of equitable mortgage, although they are not mentioned in the memorandum of deposit. And it makes no difference that the fixtures are of a kind called 'trade fixtures'; that circumstance being of importance only in questions depending between landlord and tenant, and having no effect upon those arising between mortgagor and mortgagee. And the rule is the same in this respect, whether the mortgage be in fee, by way of lease for a term of years, or of a leasehold interest only."

The late Judge Charles P. Daly recognized this in a very learned opinion in Breese v. Bange, 2 E. D. Smith (N. Y.) 474, 490, 491. On the other hand, Globe Marble Mills Co. v. Quinn, 76 N. Y. 23, 32 Am. Rep. 259, reads at first sight to the contrary. In it the tenant puts in certain trade fixtures after which the landlord executed a mortgage upon the premises. Subsequently the tenant bought the premises and so merged his tenancy in the fee. The mortgage was then foreclosed, and the question was whether the mortgagee or the person originally the tenant was entitled to these trade fixtures. Judge Andrews said:

"The conversion of the machinery from personal to real property is claimed to have resulted from the purchase by and the conveyance to the plaintiff of the fee of the land, under the provisions of the lease, after the execution of the mortgage and prior to the foreclosure. The estate for years merged in the fee. As a consequence of the union of the two estates in the same person, the lesser estate was, by the technical but well-settled rule of the common law, extinguished. But the consequence claimed, that the machinery became eo instante by operation of law, a part of the realty, upon the acquisition by the plaintiff of the fee of the land to which the machinery was attached, does not, we think, follow.

"The estate which the plaintiff had as lessee merged in the estate in fee. But the ownership of the chattels, which was vested in the plaintiff before the conveyance of the land, was separate from and independent of its interest under the lease, and was not derived from the lessor. The chattels were not a part of the inheritance. This ownership was not merged, because it was not an interest carved out of the fee; and the doctrine of merger does not apply. If the plaintiff, after it acquired the fee, had mortgaged or conveyed the land, all that was comprehended within the designation of land would pass, and quite a different question would be presented. In this case, the express and presumed intention of the plaintiff, when the machinery was put into the mill, was that it should remain personal property. There is nothing to indicate a change of intention afterwards."

Mr. Dexter, the referee, thought that this was a qualification of the merger in order to prevent the inequitable result of subjecting the fixtures to the mortgage which were free of it during the tenancy. We think this explanation correct. Bispham on Equity, § 160. While there is little distinct authority in this state on the subject, there is some in other jurisdictions. Kile v. Giebner, 114 Pa. 381, 7 Atl. 154; First National Bank v. Adam, 138 Ill. 483, 498, 28 N. E. 955; McNally v.

Connolly, 70 Cal. 3, 11 Pac. 320; San Francisco Breweries v. Schurtz, 104 Cal. 420, 38 Pac. 92; Southport Bank v. Thompson, L. R. 37 Chan. Div. 64; 19 Cyc. 1064; Ewell on Fixtures, p. 275.

In Southport Bank v. Thompson, Lopes, J., said at page 72:

"In a mortgage of freehold property all things which are annexed to the place are part of the mortgage security, and therefore the deed need contain no mention of the fixtures. That is so unless a contrary intention can be collected from the deed. That, no doubt, is the law with regard to freehold property. But it has been said that a different rule applies when the mortgaged property is not freehold but leasehold. In my opinion there is no such distinction."

Some fixtures are as a matter of law regarded by the courts of this state as personalty—for example, gas fixtures and carpets. But the appellant having argued the case on general lines without making any discrimination between the particular fixtures in question, we decide it in the same way. The order is affirmed.

LACOMBE, Circuit Judge (dissenting). I am unable to concur with my Associates.

The leases are not printed in the record. It might be inferred, from the stipulation at folio 63, that some of them made express provisions as to trade fixtures while others did not. The case may be more conveniently discussed by assuming that the whole land and buildings were covered by a single lease which says nothing about trade fixtures.

The following propositions seem to me to lead to the following conclusion:

I. Before these counters, shelving, chandeliers, etc., were placed in the buildings they were personal property; the land and building being of course real estate.

II. They were of such a character and so affixed that upon the termination of the lease either by expiration, or by cancellation, by mutual consent, or by failure to pay rent, the tenant could remove them (except as there might be some lien on them for unpaid rent). This is on the theory that, when such personal property is thus placed on leased premises to be used in that way, it is the intent of the parties, implied when not expressed (it not infrequently is expressed), that it shall remain the personal property of the lessee to be disposed of as he pleases.

III. Assuming that there is nothing in the lease forbidding or restricting its assignment, the lessee might dispose of it, his chattel real, a lease for years of real estate, by sale, or he might mortgage it. In this contract of sale, or mortgage, he might make such provision as he chose touching this personal property which he had placed there, under circumstances which did not change its character or qualify in any way his right to dispose of it. He might agree that all of it should go to the purchaser, or be covered by mortgage; or that part of it might thus pass or be incumbered and part not; or that none of it should pass or be incumbered. If the prospective purchaser or mortgagee did not assent to those provisions, he would not buy the property or lend his money. If he did assent and close the contract there would be expressed a mutual intent as to the disposition of these trade appliances, which would be controlling. To the extent to which they were reserved,

they would remain the lessee's personal property just as they were when he placed them on the premises.

IV. The lessee might sell or mortgage the lease without referring at all in the contract to these trade appliances. What would then happen to them? The petitioner-appellant contends that they would pass by the sale of the lease, or be incumbered by its mortgage. No opinion need be expressed as to this contention. Assume it is correct. Upon what theory does it rest? None that I can find, except the theory that such is the intent of the parties to the sale or mortgage—an intent which will be implied when the contract contains nothing to indicate a different intent, which it might have done, if the lessee had insisted on such provision. If the petitioner's theory be accepted, it will come to pass that the original status of the trade appliances, which after emplacement remained the personal property of the lessee to be disposed of at his pleasure, has been changed because he has himself taken some affirmative action from which the law implies an intent on his part that his title to them should pass to a third party or be incumbered with a special lien to such third party.

V. It seems the natural inference from these propositions that, until the lessee does something to indicate his intent to dispose in some way of this moveable property, it must be assumed that it remains just as it was before, his property removable by him when he chooses to do so; the unincumbered title being still in himself.

In this case the lessee has not sold the lease, nor mortgaged it. What act of his can be said to evidence an intent to change its status? There is no act of his shown, except his failure to pay an ordinary debt which he has contracted. I fail to see how that single act can warrant the inference that he has thereby changed the status of this particular property of his. No doubt, a judgment for his debt may be collected out of any of his property of every kind or sort; but it seems to be going very much further to hold that, the instant judgment is entered, the property which the moment before was his personal property has become real property.

I vote to reverse.